# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| JERRI E. YOUNG, AND PATRICIA A. WALSH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PRINCIPAL FINANCIAL GROUP, INC., and PRINCOR FINANCIAL SERVICES CORPORATION,<br><br>Defendants. | DOCKET NO. _____<br><br><br>**PLAINTIFFS' CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT** |

## TABLE OF CONTENTS

Page

I.    CLASS ACTION COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

II.   PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

III.  JURISDICTION, VENUE, STANDING AND EXHAUSTION OF REMEDIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

IV.   NATURE OF THE PLAINTIFFS' CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

V.    GENERAL FACTUAL ALLEGATIONS COMMON TO ALL COUNTS. . . . . . 5

      A.    PRINCIPAL SELLS RETIREMENT PLANS TO EMPLOYERS, AND MANAGES THOSE PLANS ON BEHALF OF EMPLOYERS AND INDIVIDUAL EMPLOYEE PARTICIPANTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    PRINCIPAL SELLS "FULL SERVICE" RETIREMENT PLAN PACKAGES TO EMPLOYERS. . . . . . . . . . . . . . 6

1

C.   PRINCIPAL SELLS OTHER RETIREMENT PLANS
     AND PLAN PACKAGES TO EMPLOYERS. . . . . . . . . . . . . . . . . . . . . . . . 10

D.   WHILE RETIREMENT PLAN PARTICIPANTS ARE
     STILL WORKING UNDER THEIR PLANS, DEFENDANTS
     SOLICIT THEM TO ROLL OVER
     THEIR RETIREMENT ACCOUNTS INTO
     PRINCIPAL J-SHARES IRAs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

E.   DEFENDANTS ARE ERISA FIDUCIARIES TO THE
     PLAINTIFF PARTICIPANTS AND THEIR PLANS. . . . . . . . . . . . . . . . 14

F.   THE RETIREMENT PLANS WHICH PRINCIPAL
     SELLS EMPLOYERS ARE EMPLOYEE BENEFIT
     PLANS UNDER ERISA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

G.   DEFENDANTS OWE ERISA FIDUCIARY DUTIES TO
     THE PLAINTIFF PARTICIPANTS AND THEIR PLANS. . . . . . . . . . . . 17

VI.   DEFENDANTS' SPECIFIC DEALINGS WITH PLAINTIFF . . . . . . . . . . . . . . . . . 18

VII.  CLASS ACTION ALLEGATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VIII. COUNT ONE BREACH OF FIDUCIARY DUTY. . . . . . . . . . . . . . . . . . . . . . . . 22

      A.   FAILURE TO PROVIDE COMPLETE AND
           ACCURATE INFORMATION TO
           PLAN PARTICIPANTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      B.   FAILURE TO ACT SOLELY IN THE
           INTERESTS OF PLAN PARTICIPANTS. . . . . . . . . . . . . . . . . . . . . . 24

IX.   CAUSATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

X.    REMEDIES FOR BREACH OF FIDUCIARY DUTY. . . . . . . . . . . . . . . . . . . . 27

XI.   PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# I. CLASS ACTION COMPLAINT

**TO THE HONORABLE COURT:**

COME NOW, Plaintiffs, Jerri E. Young as a former participant in the Restaurant Concepts, Inc. 401(k) Savings Plan, and Patricia A. Walsh as a former participant in the C and J Management Corporation 401(k) Plan, through counsel, on their own behalf and on behalf of all others similarly situated, and for their Complaint against Defendants Principal Financial Group, Inc. and Princor Financial Services Corporation, state as follows:

## II. PARTIES

1. Plaintiff Jerri E. Young brings this action in her capacity as a former participant in the Restaurant Concepts, Inc. 401(k) Savings Plan and is a resident of Iowa who at all times relevant to this Complaint lived in Polk County Iowa.

2. Plaintiff Patricia A. Walsh brings this action in her capacity as a former participant in the C and J Management Corporation 401(k) Plan and is a resident of Iowa who at all times relevant to this Complaint lived in Polk County Iowa.

3. Defendant Principal Financial Group, Inc. (hereinafter "Principal") is an Iowa corporation with its principal place of business in Des Moines, Iowa. Defendant sells and services defined contribution and defined benefit retirement plans, including but not limited to 401(k), money purchase, cash balance, 403(b), employee stock option, KEOGH, SEP and other plans (hereinafter 'retirement plans'), throughout the country, including in the Southern District of Iowa.

4.      Defendant Princor Financial Services Corporation (hereinafter "Princor") is an Iowa corporation and wholly owned subsidiary of Principal Financial Group, Inc., with its principal place of business in Des Moines, Iowa.  Defendant Princor sells securities throughout the country, including in the Southern District of Iowa.

## III. JURISDICTION, VENUE, STANDING AND EXHAUSTION OF REMEDIES

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

6.      Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Defendants do business in this district, the ERISA-protected retirement plans at issue were administered in this district, and some or all of the fiduciary breaches for which relief is sought occurred in this district.

7.      Plaintiffs have standing under ERISA because Defendants' breaches of their fiduciary duties deprived Plaintiffs of their status as retirement plan participants.

8.      Because of the very nature of the Defendants' violations and Plaintiffs' harm, no plan or administrative remedies were available or sufficient for Plaintiffs to exhaust.

## IV. NATURE OF THE PLAINTIFFS' CLAIMS

9.      This is a class action brought pursuant to § 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3), against the Defendants - fiduciaries whose obligations to the Plaintiffs and Class members are enumerated in ERISA.

10.    Plaintiffs and Class members were participants in retirement plans administered by Defendants.

11.    Plaintiffs allege that Defendants, as fiduciaries of the participants and their plans, breached their duties to them and other participants in the Class in violation of ERISA.

12.    Specifically, Plaintiffs allege Defendants failed to provide complete and accurate information to participants, deceived and misled them, and that Defendants failed to act solely in the interests of the participants and their plans and instead engaged in blatant and massive self-dealing – all in violation of ERISA.

13.    Defendants are liable under ERISA to restore losses sustained by the Plaintiffs and Class members and for other relief as a result of their breaches of their fiduciary obligations.

## V.  GENERAL FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**A.    PRINCIPAL SELLS RETIREMENT PLANS TO EMPLOYERS, AND MANAGES THOSE PLANS ON BEHALF OF EMPLOYERS AND INDIVIDUAL EMPLOYEE PARTICIPANTS**

14.    Principal represents to employers and their employees that it "is a leader in offering businesses [and] individuals ... a wide range of financial products and services, including retirement and investment services ... through its diverse family of financial services companies." Principal Financial Group, *About the Principal Financial Group*, http://www.principal.com/about/news/documents/about.pdf.

15.    Principal represents to employers and their employees that "[r]etirement services have been a core business of The Principal for more than 60 years.  As a total retirement solutions innovator, The Principal manages more than $143 billion in retirement funds,

representing more than 47,000 plan sponsors and more than 3 million participants." Plan

sponsors are employers and others. Participants are their employees who have individual

retirement accounts under their employers' plans. Principal Financial Group, *About the Principal*

*Financial Group*, http://www.principal.com/about/news/documents/about.pdf.

16.     Principal represents to employers and their employees that as "a member of the

Fortune 500, The Principal Financial Group has $187.8 billion in assets under management and

serves some 15.2 million customers worldwide ...." Principal Financial Group, *About the*

*Principal Financial Group*, http://www.principal.com/about/news/documents/about.pdf.

17.     Principal represents to employers and their employees, in terms of asset

management and accumulation in the United States, that it is a "401(k) leader," providing 401(k)

plans to "47,000 employers with 3.1 million pension plan participants," that it has "143.8 billion

dollars in assets under management," and that it is "ranked among the 100 largest mutual fund

managers, serving nearly 890,000 shareholder accounts." Principal Financial Group, *About the*

*Principal Financial Group*, http://www.principal.com/about/news/documents/about.pdf.

## B.     PRINCIPAL SELLS "FULL SERVICE" RETIREMENT PLAN PACKAGES TO EMPLOYERS

18.     Among the retirement and investment services it offers businesses and

individuals, Principal sells "full service" retirement plans to employers who wish to purchase,

sponsor, and provide the benefit of retirement plans to their employees.

19.     Principal's employer-sponsored retirement plans permit employees to invest pre-

tax earnings in mutual funds offered within said plans.

20.     Principal selects which among thousands of mutual funds available will be part of its pre-packaged retirement plans.

21.     Employers then select mutual funds for their retirement plans from the limited menu of mutual funds which Principal presents to them.

22.     In making its choice of mutual funds to be included in its retirement plan, the employer selects only from among those mutual funds pre-selected by Principal for inclusion in its pre-packaged plans.

23.     Likewise, when selecting which mutual funds in which to invest their retirement savings in their individual accounts, employees may only choose from among the group of mutual funds selected first by Principal and then by their employer.

24.     After an employer selects the mutual funds which it will offer to its employees, Principal retains the authority to substitute other mutual funds for the chosen mutual funds.

25.     After an employer selects the mutual funds which it will offer to its employees, Principal retains the authority to refuse an employer's or an employee's choice of a particular mutual fund by closing the fund to new investments.

26.     As a full service plan provider, Principal provides all the services necessary for employers to provide retirement plans for their employees.

27.     As a full service plan provider, Principal provides complete plan management services so that employers can "spend time managing [their] business, not [their] plans." Principal Financial Group, *Employer Services for Defined Benefit Plans: For Corporations or Private Companies with 25 or More Employees*, http://www.principal.com/retirement/biz/ pen_ersrv_db.htm.

28.    Principal provides to employers promotional materials for promoting an employer's plan to its employees, material and services to help employers meet education, plan and participation requirements, and ongoing support to communicate with employees about their individual retirement accounts.

29.    Principal provides individual employees asset allocation assistance, information on the performance of their investments and the status of their retirement savings, and internet access to their accounts.

30.    Principal provides employers with complete plan legal compliance services, consulting services and plan administration services.  Those services include daily updates of plan records, a program for distribution of benefits to employees, investment reports to employees, pre-printed employee newsletters and signature-ready government forms.

31.    As part of its advertising and marketing of pre-packaged plans, Principal commends, lauds and extols to employers its "investment strategy ... backed by over a century of financial expertise." Principal Financial Group, *Investment Services Available for Defined Benefit Plans: For Corporations or Private Companies with 25 or More Employees*, http://www.principal.com/Retirement/biz/pen_invsrv_db.htm.

32.    Principal also commends, lauds and extols its "investment philosophy, goals and strategies" to employers, and represents that its "investment strategies are designed to produce superior long-term results." Principal Financial Group, *Investment Services*, http://www.principal.com/retirement/biz/Tafthartley/thinvestment.htm.

33.     In those ways and others, Principal holds itself out to employers and employees as a highly-skilled financial strategist possessing special knowledge and expertise whose advice can be trusted by employers and employees.

34.     Defendants provide investment advice to employers and employees, including the implicit advice that the mutual funds Principal offers are sound retirement plan investments, specific advice to employees on the allocation of assets within their individual retirement accounts, and the advice that Princor sales counselors give employees to cash out and roll over their retirement accounts as detailed in section "D" infra.

35.     Defendants provide individualized investment advice to employees through their "Investor Profile Quiz" which helps employees determine their risk tolerance for investments and as employees reach retirement age through telephone counseling as detailed in section "D" infra.

36.     Principal represents to employers that it charges "competitive fees" and that "low fees mean greater opportunity for returns," and that "paying less in fees may be one way for your plan members to save more for retirement." Principal Financial Group, *Investment Services Available for Defined Benefit Plans: For Corporations or Private Companies with 25 or More Employees*, http://www.principal.com/Retirement/biz/pen_invsrv_db.htm.

37.     Among the thousands of mutual funds offered by numerous financial services companies in the nation which Principal selects for its pre-packaged retirement plans are mutual funds sold by Principal itself.  Principal mutual funds include Large Cap Growth Fund, Small Cap Blend Fund, and Mid-Cap Value Fund which are offered within several Principal mutual fund classes.  Not included among those Principal mutual funds which Principal allows

employers and employees to select in their retirement plans are Principal J-Share Class mutual funds.

38.     Principal exercises exclusive control and discretion over the selection of mutual funds available as investment options to plans and their participants.

39.     Principal has the exclusive control and discretion to substitute or close mutual funds as investment options for plans and their participants.

## C.     PRINCIPAL SELLS OTHER RETIREMENT PLANS AND PLAN PACKAGES TO EMPLOYERS

40.     In addition to the full service retirement plan packages described supra, Principal also offers employers other retirement plans for which Principal assumes responsibility and exercises discretion comparable to that in its full service package plans enumerated in part B, supra.

41.     The exact plan documents tethering Principal's contractual relationships with all of the employers and participants it serves, at this point not yet discovered by the Plaintiffs, expressly enumerate Principal's responsibilities and discretion with respect to those other plans' participants' retirement investments.

42.     Principal possesses and exercises the same responsibilities, discretion and control in its other plans as it does in its full service packaged plans enumerated supra.

43.     In the retirement plans other than the full service packaged plans described supra that Principal sells employers, Principal never relinquishes to employers or participants the discretion it exercises in its full service retirement packages.  That discretion includes its exclusive control and choice over the selection of mutual funds available as investment options to plans and

their participants, and exclusive control and choice to substitute or close mutual funds as investment options for plans and their participants.

44.     Defendants provide investment advice to employers and employees, including the implicit advice that the mutual funds Principal offers are sound retirement plan investments, specific advice to employees on the allocation of assets within their individual retirement accounts, and the advice that Princor sales counselors give employees to cash out and roll over their retirement accounts as detailed in section "D" infra.

**D.     WHILE RETIREMENT PLAN PARTICIPANTS ARE STILL WORKING UNDER THEIR PLANS, DEFENDANTS SOLICITS THEM TO ROLL OVER THEIR RETIREMENT ACCOUNTS INTO PRINCIPAL J-SHARES IRAs**

45.     In 1968, Principal created subsidiary "Princor," within the company to sell securities, including mutual funds and stocks.   Throughout the Class Period, Princor was a Securities and Exchange Commission registered broker – dealer of securities.

46.     In 1998, Principal established Principal Connection as the in-house sales department of Princor.  Throughout the Class Period, Principal Connection sales counselors offered investment advice and Principal Individual Retirement Account ("IRA") investment products to participants of the different retirement plans and packages Principal sold employers.

47.     Principal Connection is a call center in Des Moines, Iowa, staffed by dozens of NASD [National Association of Securities Dealers] Registered Representatives who give investment advice over the telephone to retirement plan participants, who call in response to letters Principal sends those participants urging them to call.

48.     Principal advises and directs retirement plan participants to telephone its Principal Connection sales counselors – rather than its pension administration department – with "forced

call" letters at different times during their employment.  Following the requirements imposed by Principal, Principal Connection sales counselors give uniform advice to every participant who calls in response to those "forced call" letters to roll over their retirement assets and to buy Principal IRA investment products. The clearly defined sales priority is Principal J-Shares IRAs.

49.     Principal created its J-Shares class of mutual funds in 2001 for the sole purpose of offering them to retirement plan participants.  There are more than 30 Principal mutual funds within the J-Shares fund class.

50.     J-Shares are the only mutual funds which Principal Connection sales counselors can sell to retirement plan participants who roll over their accounts even though Principal has several classes of less expensive mutual funds it sells everyone else.

51.     Of all the Principal mutual funds, J-Shares were the most expensive from 2001 through 2006 – they had the highest internal expenses of any Principal mutual fund class.  Internal expenses that Principal charges J-Shares investors exceed the internal and annual expenses the participant would pay if they left their retirement money in their plans.

52.     But using misleading, scripted investment advice, Principal Connection sales counselors made J-Shares sound less expensive to investors than leaving their money in their retirement accounts.

53.     Principal Connection phone sales counselors do not disclose over the telephone to retirement plan participants the internal expenses of J-Shares or the comparison of J-Shares internal expenses to those of the participants' retirement plan.

54.     Principal makes the sale of J-Shares its top priority for its phone sales counselors. High recognition and prizes are given counselors for moving money out of retirement accounts and into Principal IRAs.

55.     Principal sets goals for its sales counselors to dislodge retirement assets into J-Shares.   For meeting or exceeding their J-Shares sales goals, phone counselors are paid a quarterly bonus out of the internal expenses Principal charges investors who buy those funds. Those bonuses are never disclosed to participants in their telephone conversations with them, in the "forced call" letters, or by Principal in its J-Shares Prospectuses during the Class Period.

56.     Concealed from investors both in said telephone sales recommendations and J-Shares Prospectuses is Principal's illegal and secret payments to agents of record [the employers' retirement plan insurance agents] of commissions out of the J-Shares' mutual funds internal 12(b)(1) expenses that investors pay.

57.     Principal management conducts monthly performance reviews of all phone sales counselors.   Those who do not meet said sales goals are written up and told to bring their numbers up.  If sales counselors do not thereafter meet said goals, their employment is terminated.

58.     Regardless of the amount of money in a participant's retirement account that they cash out and roll over in to a J-share mutual fund, even if it is a million dollars or half a million dollars, Principal does not give that investor any "break points."  Yet for every other investor who buys Class A shares mutual funds from Principal with a value over $50,000, Principal gives break points – i.e. cheaper expenses and/or commissions.

59.     Principal has a company policy that new investors who invest more than $250,000 in Principal mutual funds are required to be given A-shares mutual funds because of the low internal

expenses and low front-end sales charges of those funds.  Principal also has a company policy that retirement plan participants who roll over $250,000 or more are not given A-shares with their corresponding low internal expenses and low front-end sales charges – they can only be sold J-Shares.

**E.    DEFENDANTS ARE ERISA FIDUCIARIES TO THE PLAINTIFF PARTICIPANTS AND THEIR PLANS**

60.    ERISA defines a fiduciary of an employee benefit plan as follows:

> "A person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

61.    ERISA treats as fiduciaries not only persons named as fiduciaries under § 402(a)(1) or those who are expressly designated as fiduciaries by Plan documents, but also any other persons who act in fact as fiduciaries, i.e. perform fiduciary functions.

62.    Whether or not a person is an ERISA fiduciary is determined by the functions performed by that person.

63.    During the Class Period, Defendants performed fiduciary functions under the ERISA statutory standard and thereby also acted as fiduciaries under ERISA.

64.    Satisfying 29 U.S.C. § 1002(21)(A)(ii), Defendants render investment advice for a fee or other compensation to participants and plans as detailed supra in subparts A, B, C, and D.

65.    Defendants' entire purpose of their "forced call" letter scheme which channels participants to their sales counselors is to render investment advice to those participants – e.g. roll over your retirement accounts into Principal J-Shares.

14

66.     Defendants also render investment advice to participants and plans by pre-selecting the mutual funds it considers to be appropriate investments for plans and participants to choose from, by Principal's unilateral control over which mutual funds will remain available to the retirement plans it administers, through the investment advice they provide employees in matching specific mutual funds to employees' risk tolerance through Principal's "Investor Profile Quiz," and by recommending to plans specific pre-selected mutual funds based on Principal's analysis of a plan's previous investments.

67.     Satisfying 29 U.S.C. § 1002(21)(A)(i) and (iii), Principal possesses or exercises discretionary authority or discretionary control respecting management of plans or disposition of plan assets by providing complete plan management services in its "full service" plan packages it sells employers so that those employers can "spend time managing [their] business, not [their] plans;" by selecting which mutual funds it will offer in its J-Shares; and possessing or exercising the numerous and specific discretionary and management functions enumerated in subpart B, supra.

68.     Satisfying 29 U.S.C. § 1002(21)(A)(i) and (iii), Principal possesses or exercises discretionary authority or discretionary control respecting management of plans or disposition of plan assets by providing plan management and other services, and by possessing or exercising the numerous and specific discretionary and management functions for other Plans as detailed in agreements with those Plans as referenced in subpart (C), supra.

69.     Defendants also possess the discretion to communicate with participants about the future of plan costs and benefits, and compare those to the costs and benefits of other Principal investments. Defendants exercise that discretion through their "forced call" letter scheme and the actions they require phone sales counselors take with every participant who calls.

15

70.    Reasonable participants, including Plaintiffs and class members, receiving said Principal "forced call" letters and calling the telephone number in those letters and reaching Principal Connection sales counselors would have thought that those counselors were communicating in their capacity as plan administrators because the "forced call" letters referenced their retirement plans.    Reasonable participants would also have understood that Principal Connection counselors had expert knowledge regarding their plans and individual accounts.

71.    When recommending that participants roll over their retirement accounts and invest in Principal J-Shares in response to the "forced call" letter scheme that brought participants to the Principal Connection sales office, those sales counselors were giving investment advice which is a fiduciary act under ERISA.

72.    Principal Connection sales counselors were acting as fiduciaries by taking calls from participants, giving investment advice to them deceptively, comparing their retirement accounts to J-Shares, and providing information about their accounts.

73.    Defendants, in all the ways detailed above, spoke in significant part in their capacities as plan administrators when talking with participants urging them to roll over their retirement accounts.

74.    Defendants engaged in plan-related activities in all the ways detailed above including deceiving and misleading participants to roll over their retirement accounts out of their plans and purchase J-Shares.

75.    Defendants gave their sales counselors the authority to communicate as fiduciaries in these ways with participants, and by the express language used in the "forced call" letters

16

communicated to participants that those counselors had the authority to talk to them about their retirement accounts.

76.     By making intentional representations about the future of plan costs and benefits vis-a-vis the future of J-Shares costs and benefits, sales counselors engaged in fiduciary acts of plan administration.

## F.    THE RETIREMENT PLANS WHICH PRINCIPAL SELLS EMPLOYERS ARE EMPLOYEE BENEFIT PLANS UNDER ERISA

77.     The retirement plans and plan packages described in subparts (B) and (C) supra, are employee benefit plans within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and are therefore subject to the provisions and obligations of Title I of ERISA pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

## G.    DEFENDANTS OWE ERISA FIDUCIARY DUTIES TO THE PLAINTIFF PARTICIPANTS AND THEIR PLANS

78.     At all relevant times, as alleged above, Defendants were fiduciaries as defined by ERISA § 3(21)(A),  29 U.S.C. § 1002(21)(A).

79.     At all relevant times, as alleged above, the scope of the fiduciary obligations of Defendants included all of their communications with Participants and Plans, and specifically its communications with Participants as set out in subpart (D) supra.

80.     ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), requires, in pertinent part, that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan;

17

with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

## VI. DEFENDANTS' SPECIFIC DEALINGS WITH PLAINTIFFS

81.     Throughout the Class Period, Defendants implemented their manipulative and deceptive contrivance and scheme to dislodge assets of retirement accounts which Defendant Principal administered on behalf of said account holders into Principal's own J-Shares mutual funds and to pay its phone sales counselors secret and undisclosed bonuses and commissions for making those sales out of the extraordinarily high internal expenses of the J-Shares which Principal charged those investors who followed the scripted advice of Principal Connection phone sales counselors and invested in J-Shares.

82.     Throughout the Class Period, Defendants mailed through the U.S. Mail hundreds of thousands of "forced call" letters to individual account holders throughout the country whose retirement accounts Principal itself administered on behalf of those investors.  Said "forced call" letters urged account holders to call Principal about their account.

83.     On or about February 28, 2006, Plaintiff, Jerri E. Young, whose retirement account was administered by Principal, received such a "forced call" letter.

84.     On or about June 1, 2006, Plaintiff, Patricia A. Walsh, whose retirement account was administered by Principal, received such a "forced call" letter.

85.     In response to said letter from Defendant Principal, Plaintiff Young telephoned the number on the letter within a few days of receiving it and spoke with an NASD registered representative employed by Defendant Princor.  Said registered representative advised Ms.

Young that she should not leave her money in her retirement plan account with her company and that she should roll over her retirement plan into a Principal IRA and to purchase eight specific Principal J-Shares mutual funds that said counselor chose for her and recommended. Ms. Young accepted those recommendations and was mailed by the Defendants a J-Shares Fund Prospectus and accompanying purchase agreements for formal purchase of said J-Shares.

86.     In response to said letter from Defendant Principal, Plaintiff Walsh telephoned the number on the letter within a few days of receiving it and spoke with Joshua C. Saboe, an NASD registered representative employed by Defendant Princor.  Said registered representative advised Ms. Walsh that she should not leave her money in her retirement plan account with her company, that she should not transfer her assets to another investment company as she had expressed she was considering, and that she should roll over her retirement plan into a Principal IRA and to purchase a specific Principal J-Shares mutual fund that said counselor chose for her and recommended. Ms. Walsh accepted those recommendations and was mailed by the Defendants a J-Shares Fund Prospectus and accompanying purchase agreements for formal purchase of said J-Shares.

87.     On or about June 6, 2006 without knowledge of the material information concealed by the Defendants' registered representative, described in this Complaint, Plaintiff Young purchased 5,684.593 shares of J-Shares mutual funds enumerated in the attached certification at a total price of $68,887.52.

88.     On or about September 7, 2006, without knowledge of the material information concealed by the Defendants' registered representative, described in this Complaint, Plaintiff

Walsh purchased 3,024.243 shares of J-Shares mutual funds enumerated in the attached certification at a total price of $38,727.80

89.    Throughout the Class Period, Plaintiffs have held said J-Shares investments.

## VII. CLASS ACTION ALLEGATIONS

90.    Plaintiffs bring this action as a class action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the following class of persons similarly situated (the "Class"):

> All persons who were participants in retirement plans in which Principal Financial Group Inc. and Princor Financial Services Corporation were fiduciaries or acted as fiduciaries and who rolled over their retirement accounts to Principal Investors Funds J-Shares class mutual funds in response to solicitations by Defendants to do so at any time from August 28, 2001 to the present (the "Class Period").

91.    The members of the Class are so numerous that joinder of all members is impracticable. Plaintiffs do not know the exact number of Class members because that information is in the exclusive control of Defendants and can only be ascertained through appropriate discovery. Plaintiffs believe there are, at a minimum, hundreds of thousands of members of the Class from diverse geographies who were participants in Principal retirement plans and who rolled over their retirement accounts into Principal J-Shares mutual funds upon the inducement of Defendants during the Class Period.

92.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among questions of law and fact common to the Class are:

(a)    Whether Defendants were fiduciaries to the Plaintiffs, members of the Class and their Plans;

(b)    Whether Defendants owed fiduciary duties to the Plaintiffs, members of the

Class and their plans;

(c)    Whether Defendants breached fiduciary duties to the Plaintiffs, members of the Class and their plans by failing to act solely in the interest of the plans' participants;

(d)    Whether Defendants violated ERISA; and

(e)    Whether the Plaintiffs and members of the Class have sustained damages and, if so, what is the proper measure of damages.

93.    Plaintiffs' claims are typical of the claims of the members of the Class because:

(a)    Plaintiffs and the other members of the Class each sustained damages arising out of the same wrongful conduct of the Defendants in violation of federal law as complained of herein;

(b)    Plaintiffs and other members of the Class were owed the same fiduciary duty and other ERISA based obligations by the Defendants;

(c)    The Defendants' breaches of these obligations constitutes a breach to each plaintiff and each member of the class; and

(d)    To the extent that there are any differences among class members' damages such differences would be a product of simple arithmetic based on the Defendants' account records—such minimal and formulaic differences are no impediment to class certification.

94.    Plaintiffs are Class members and will fairly and adequately protect the interests of the members of the Class and have retained experienced counsel competent in complex litigation, class action and ERISA. Plaintiffs have no interests antagonistic to or in conflict with those of the Class, nor do they have any unique claims or defenses that might undermine the efficient resolution of the classes' claims.

95.    Class action status in this ERISA action is warranted under Rule 23(b)(2). Principal has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

21

96.     Class action status in this ERISA action is warranted under Rule 23(b)(3). A class action is superior to other methods for the fair and efficient resolution of this controversy. The class action device presents fewer management difficulties, and provides the benefit of a single adjudication, economy of scale, and comprehensive supervision by a single court. The damages suffered by each Plaintiff and Class member are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation. Thus, absent class certification, it would not be feasible for Plaintiffs and Class members to redress the wrongs done to them. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system. Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court.

## VIII. COUNT ONE
### BREACH OF FIDUCIARY DUTY

## A.    FAILURE TO PROVIDE COMPLETE AND ACCURATE INFORMATION TO PLAN PARTICIPANTS

97.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth here.

98.     Defendants owed duties of loyalty under ERISA § 404, 29 U.S.C. § 1104 to Participants to disclose and inform, which encompassed:

(a)     The duty to speak truthfully to participants;

(b)     The duty to never lie to participants;

(c)     The duty to never mislead or deceive participants;

(d)     The duty to provide complete and accurate information to participants material to the circumstances;

22

(e)     The duty to inform participants when knowing that silence could be harmful to their interests or when silence could lead to uninformed investment decisions on participants' parts;

(f)     The duty to never misinform participants;

(g)     The duty to refrain from providing incomplete information or concealing information regarding investment options available to participants; and

(h)     Other duties not here specifically enumerated.

99.     Defendants breached their duties to inform and disclose by not disclosing, or by not adequately disclosing, to the Plaintiffs:

(a)     that the goal of Defendants' phone sales counselors is to get pre-retirees out of their retirement plans and their assets into Principal J-Shares IRAs;

(b)     that J-Shares are the only mutual funds which Principal Connection sales counselors can sell to retirement plan participants who roll over their accounts even though Principal has several classes of less expensive mutual funds it sells everyone else;

(c)     that J-Shares are not no-load funds even though phone sales counselors are trained to make them sound as such;

(d)     that J-Shares internal expenses far exceed the internal and annual expenses that the participant would pay if they leave their retirement money in their plan;

(e)     that Defendants pay its phone sales counselors quarterly bonuses for selling J-Shares out of the internal expenses that Defendants charge plan participants who invest in J-Shares;

(f)     that those quarterly bonuses are effectively commissions because they're tied to each individual sale;

(g)     that regardless of the amount of money a retirement plan participant rolls over into J-Shares, Defendants will not give that investor "break points" even though other investors are required to be given "break points;"

(h)     and that because of the high fees and internal expenses of J-Shares, retirement plan participants who roll over their accounts and invest in J-Shares always pay significantly more to Defendants in fees than they would have if they left their money in their plans.

23

100.    Defendants further breached their fiduciary duties in making misrepresentations and omissions material to those investment decisions by plan participants.   The above-enumerated statements, acts and omissions constituted misrepresentations and omissions that were fundamentally deceptive concerning participants' decisions to roll over their accounts and invest in Principal J-Shares, and were material to any reasonable participant's decision about whether or not to stay in their plans or invest in Principal J-Shares during the Class Period.

101.    Plaintiff and class members sustained and continued to sustain damages as a direct and proximate result of Principal's breaches of fiduciary duty, including the loss of their retirement plan accounts, the fees and expenses Principal charged and is charging them for their J-Shares mutual funds, and loss of investment capital due to the higher fees and expenses charged which reduced the corpus of each account.

102.    Pursuant to ERISA §502(a)(3), 29 U.S.C. § 1132(a)(3) Defendants in this count are liable to restore to each participant all profits Principal realized as a result of each such breach, and is subject to other equitable and remedial relief as the court deems appropriate.

## B.    FAILURE TO ACT SOLELY IN THE INTERESTS OF PLAN PARTICIPANTS

103.    Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth here.

104.    Defendants owed duties of loyalty under ERISA § 406(B)(1), (2), and (3), 29 U.S.C. §§ 1106(b)(1), (2), (3), and ERISA § 404, 29 U.S.C. § 1104, to advise participants and administer plans with an "eye single" to the interests of participants regardless of the interests of Defendants themselves, which included:

24

(a)    The duty to act solely in the interests of plan participants;

(b)    The duty never to act to harm the interests of participants or their plan;

(c)    The duty to never self-deal and to never enrich themselves beyond defraying reasonable expenses of administering the plan;

(d)    The duty to never induce participants to withdraw from their plans by making intentional misrepresentations about plan benefits or costs.

105.    Defendants breached said fiduciary duties to Plaintiffs:

(a)    by obtaining the names and home addresses of employees nearing retirement whose plans Principal administered for purposes of persuading them to roll over their accounts and buy other Principal IRA products;

(b)    by sending pre-retirees even as young as age 58 "forced call" letters misleading them to believe that they were dealing with their account manager who was looking out for their interests in rendering investment advice to them before they retired;

(c)    by not disclosing that the telephone number in said "forced call" letters routed participants to the Defendants J-Shares sales boiler room rather than Defendants' pension administration department;

(d)    by trying to get their assets into J-Shares regardless of the individual circumstances of the participant;

(e)    by putting them in Principal's most expensive mutual fund from 2001 through 2006 with internal fees and expenses far in excess of any other fund class which Principal offered any one else;

(f)    by not giving "break points" to them regardless of the size of their account balances even though company policy requires that "break points" be given to other investors who have more than $50,000 in account balances;

(g)    by dangling J-Shares investments over the heads of retirement plan participants when they called in to discuss their "plans";

(h)    by manipulating participants into rolling over their accounts and buying J-Shares which Defendants knew but did not disclose were leaden with costs and expenses far exceeding those of the participants' plans;

(i)    by not confining their investment advice to plan investment advice;

(j)    and by seizing for themselves, contrary to the interests of both participants and their plans, higher fees and expenses by persuading them to roll over their accounts.

106.    Plaintiffs and class members sustained and continued to sustain damages as a direct and proximate result of Principal's breaches of fiduciary duty, including the loss of their retirement accounts, the fees and expenses Defendants charged and are charging them for their J-Shares mutual funds, and loss of investment capital due to the higher fees and expenses charged which reduced the corpus of each account.

107.    Pursuant to ERISA §502(a)(3), 29 U.S.C. § 1132(a)(3), Defendant Principal in this count is liable to restore to each participant all profits Principal realized as a result of each such breach, and is subject to other equitable and remedial relief as the court deems appropriate.

## IX.  CAUSATION

108.    Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

109.    The above-enumerated actions of the Defendants proximately caused Plaintiffs and Class members monetary losses and damages, including the loss of their retirement accounts; excessive fees and expenses Principal charges them for J-Shares; and steady diminishment in the corpus of their J-Shares investments and resulting loss of value of their retirement assets, as Principal reduced every account with each charge for fees and expenses.

110.    As a direct and proximate result of the Defendants' actions, statements and omissions enumerated in this Complaint, the Plaintiffs and Class members were deceived concerning the prudence of cashing out their accounts and investing in J-Shares; the actions of

26

Defendants were material to their decisions to do so; the Plaintiffs and Class members acted reasonably; and they relied to their detriment on Defendants actions.

## X. REMEDIES FOR BREACH OF FIDUCIARY DUTY

111.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) authorizes a plan participant to bring a civil action for injunctive and other appropriate equitable relief.

112.    The Plaintiffs and Class members are therefore entitled to relief from the Defendants in the forms of:

(a)    restitution to compensate them for the benefits of their retirement plans of which they have been deprived by the Defendants, to remedy the breaches of fiduciary duties alleged above in an amount to be proven at trial;

(b)    restitution of the fees, costs and expenses Defendants charged after Plaintiffs and Class members rolled over their retirement accounts into Principal J-Shares minus the amount Defendants would have charged as fees, costs and expenses for administering their plan accounts had they stayed in those plans, to remedy the breaches of fiduciary duties alleged above in an amount to be proven at trial;

(c)    disgorgement to the Plaintiffs and Class members of the profits Defendants made by their breaches of fiduciary duties alleged above in an amount to be proven at trial;

(d)    an injunction reinstating Plaintiffs and Class members in their plans under the terms of their plans as they existed at the time they were rolled over into Principal J-Shares;

(e)    reasonable attorneys' fees and expenses;

(f)    taxable costs;

(g)    pre-judgment and post-judgment interest on those amounts, as provided by law; and

(h)    for such other relief as the Court deems just and proper.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that this Court enter its judgment in favor of Plaintiffs and the Class, for:

A.      Certification of the Class under Rule 23 of the Federal Rules of Civil Procedure with the named Plaintiffs as Class representatives;

B.      A declaration that the Plaintiffs have standing to bring this suit;

C.      An award of judgment entitling Plaintiffs and all Class members to the remedies provided in ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

D.      Declaration that the Defendants breached their ERISA fiduciary duties to the Plaintiffs and Class members;

E.      Restitution to compensate Plaintiffs and Class members for the benefits of their plans of which they have been deprived;

F.      Restitution to the Plaintiffs and Class members of the fees, costs and expenses Defendant charged them after Plaintiff and Class members rolled over their retirement accounts into Principal J-Shares minus the amount Defendants would have charged them as fees, costs and expenses for administering their plan accounts had they stayed in those plans;

G.      Disgorgement to the Plaintiffs and Class members of the profits Defendants made by their breaches of fiduciary duties alleged in this Complaint;

H.      An Order reinstating Plaintiffs and Class members in their retirement plans under the terms of their plans as they existed at the time of the Defendants' fiduciary breaches as alleged herein;

I.        An Order enjoining Defendants from any further violations of their ERISA fiduciary obligations in the forms alleged herein;

J.        An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

K.        An Order awarding reasonable attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g);

L.        An Order awarding pre-judgment and post-judgment interest on costs, attorneys' fees and expenses, as provided by law; and

M.        For such further relief as the Court deems just and proper.

/s/ James A. Albert
JAMES A. ALBERT  AT0000428


/s/ Brian P. Galligan
BRIAN P. GALLIGAN  AT0000428


/s/ Richard H. Doyle
RICHARD H. DOYLE  AT0002088


/s/Timm W. Reid
TIMM W. REID  AT0006547


GALLIGAN, DOYLE, REID & GALLIGAN, P.C.
The Plaza - Suite 5
300 Walnut Street
Des Moines, Iowa, 50309-2239
Telephone:  (515) 282-3333
Facsimile:  (515) 282-0318
E-mail:  BGalligan@galliganlaw.com
       JAlbert@galliganlaw.com

ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Clerk of Court using the ECF system on the 28th day of August, 2007.

/s/ Heather J. Bauman

Plaintiff's Certification of Investment of Principal J-Shares Class Mutual Funds.

I, Jerri E. Young, hereby certify that the following is true and correct to the best of my knowledge, information and belief:

1.      I have reviewed the Complaint in this action, authorize the filing of this Certification, and authorize the filing of the Complaint.

2.      I did not purchase these securities at the direction of my counsel, or in order to participate in any private action arising under the Securities Exchange Act of 1934, Securities Act of 1933, or any other federal statute.

3.      I am willing to serve as a representative party on behalf of the class (the "Class") as defined in the Complaint, including providing testimony at deposition and trial if necessary.

4.      Plaintiff's transaction in Principal J-Shares Class Mutual Funds security that is the subject of this action during the class period is:

| FUND | # SHARES PURCHASED | DATE PURCHASED | PRICE PER SHARE | AMOUNT INVESTED | IF SOLD, # OF SHARES SOLD AND DATE |
|------|--------------------|----------------|-----------------|-----------------|-----------------------------------|
| INTL EMG MKTS | 517.433 | 06/12/06 | $19.97 | $10,333.13 | Still held |
| DIVERSIFIED INTL | 552.869 | 06/12/06 | $12.46 | $6,888.75 | Still held |
| LGCAP SP 500 INDEX | 1,184.992 | 06/12/06 | $8.72 | $10,333.13 | Still held |
| PRTNR LGCAP BLEND | 1,038.506 | 06/12/06 | $9.95 | $10,333.13 | Still held |
| PRTNR MDCAP GROWTH | 812.353 | 06/12/06 | $8.48 | $6,888.75 | Still held |
| PRTNR MDCAP VALUE | 754.243 | 06/12/06 | $13.70 | $10,333.13 | Still held |
| SMCAP SP 600 INDEX | 418.260 | 06/12/06 | $16.47 | $6,888.75 | Still held |
| SMCAP VALUE | 405.937 | 06/12/06 | $16.97 | $6,888.75 | Still held |

5.      During the three-year period preceding the date of this Certification, I have not sought to serve, nor have I served, as a representative to any party or on behalf of any class in any action arising under the Securities Exchange Act of 1934 or the Securities Act of 1933.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 26th day of August, 2007.

_Jerri Young_
Signature

1233 25th Street
Address

_Jerri Young_
Name (please print)

West Des Moines        IA        50266
City                   State      Zip

(515) 225-6561
Telephone Number

JYoungforever@aol.com
E-Mail Address

Subscribed and sworn to before me this 26th day of August, 2007.

_James A. Albert_
Notary Public



Return to:
James A. Albert, Attorney at Law
Galligan, Doyle, Reid & Galligan Law Firm, P.C.
300 Walnut Street, Suite 5
Des Moines, IA 50309
Phone: (515) 282-3333
Fax:  (515) 282-0318
E-mail: BGalligan@Galliganlaw.com

Plaintiff's Certification of Investment of Principal J-Shares Class Mutual Funds.

I, Patricia A. Walsh, hereby certify that the following is true and correct to the best of my knowledge, information and belief:

1.      I have reviewed the Complaint in this action, authorize the filing of this Certification, and authorize the filing of the Complaint.

2.      I did not purchase these securities at the direction of my counsel, or in order to participate in any private action arising under the Securities Exchange Act of 1934, Securities Act of 1933, or any other federal statute.

3.      I am willing to serve as a representative party on behalf of the class (the "Class") as defined in the Complaint, including providing testimony at deposition and trial if necessary.

4.      Plaintiff's transaction in Principal J-Shares Class Mutual Funds security that is the subject of this action during the class period is:

| Fund | # SHARES PURCHASED | DATE PURCHASED | PRICE PER SHARE | AMOUNT INVESTED | IF SOLD, # OF SHARES SOLD AND DATE |
|------|--------------------|-----------------|------------------|------------------|-------------------------------------|
| LIFETIME 2010 | 3,054.243 | 09/07/06 | $12.68 | $38,727.80 | Still held |

5.      During the three-year period preceding the date of this Certification, I have not sought to serve, nor have I served, as a representative to any party or on behalf of any class in any action arising under the Securities Exchange Act of 1934 or the Securities Act of 1933.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 26th day of August, 2007.

_Patricia A. Walsh_                  635 SW 46th Street
Signature                                     Address

Patricia A. Walsh                  Ankeny              IA              50023
Name (please print)                 City                  State           Zip

515-965-5358
_____
Telephone Number

_____
E-Mail Address


Subscribed and sworn to before me this 26th day of August, 2007.



Notary Public


Return to:
James A. Albert, Attorney at Law
Galligan, Doyle, Reid & Galligan Law Firm, P.C.
300 Walnut Street, Suite 5
Des Moines, IA 50309
Phone: (515) 282-3333
Fax:  (515) 282-0318
E-mail: BGalligan@Galliganlaw.com