## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| JERRI E. YOUNG and PATRICIA A. WALSH, on behalf of themselves and all others similarly situated, ) ) ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 4:07-CV-00386-RP-CFB |
| ) | |
| v. ) | Judge Robert W. Pratt |
| ) | |
| PRINCIPAL FINANCIAL GROUP, INC. ) and PRINCOR FINANCIAL SERVICES ) CORPORATION, ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED COMPLAINT

Defendants Principal Financial Group, Inc. ("PFG") and Princor Financial Services

Corporation ("Princor") (collectively, "The Principal" or "Defendants") submit this

memorandum in support of their motion to dismiss Plaintiffs' Amended Class Action Complaint

for Violations of the Employee Retirement Income Security Act ("Amended Complaint")

pursuant to Fed. R. Civ. P. 12(b)(6).

### Introduction

Plaintiffs filed this lawsuit under the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1001 *et seq.* Yet even taking all of Plaintiffs' allegations as true, this is

manifestly not an ERISA case. As a threshold matter, Plaintiffs – both of whom admit they are

no longer participants in their 401(k) plans, Am. Compl. ¶¶ 1-2 – lack standing because ERISA

confers a right to sue only on participants in benefit plans, not former participants. For this

reason alone, which underscores the inapplicability of ERISA to these facts, the Amended

Complaint should be dismissed with prejudice.

But even if Plaintiffs could overcome that fundamental hurdle, their ERISA claims fail for three additional reasons.  First, and most fundamentally, Plaintiffs have not alleged facts sufficient to support their legal conclusion that Defendants are "fiduciaries" within the meaning of ERISA.  Only if Plaintiffs can show that Defendants owe them a fiduciary duty in the first instance can they proceed with a theory that would transform the ordinary commercial transactions at issue here into a federal case governed by ERISA.

Second, even if Defendants could somehow be considered fiduciaries, Plaintiffs have failed to allege facts indicating that there was a breach of any duty.  Plaintiffs allege that Defendants failed to disclose that the mutual funds they purchased carried higher expenses than other available funds (*e.g.*, Am. Compl. ¶¶ 38-40), but by their own admission, they did so only after receiving a prospectus from Defendants (*id.* ¶¶ 103-04) that disclosed the mutual fund expenses.  Moreover, the recordings of the phone calls between Plaintiffs and Princor sales representatives – which may be considered on a motion to dismiss because they were specifically referenced in the Amended Complaint, *see infra* at 3 note 1 – show straightforward, low-pressure calls, not the overreaching, "boiler room" calls that Plaintiffs attempt to portray.

Third, Plaintiffs' claims also fail because the requested relief is not available under either of the ERISA provisions they invoke, sections 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2) & (a)(3).  Even Plaintiffs acknowledge that "the general thinking would deny that they have standing to bring this claim under ERISA § 502(a)(2)."  Am. Compl. at 32 n.1.  They contend that the Supreme Court may resolve this question in their favor in its forthcoming decision in *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 450 F.3d 570 (4th Cir. 2006), *cert. granted*, 127 S. Ct. 2971 (2007), but hopeful speculation is not sufficient to sustain a claim that, under existing law, is not cognizable.

The claim under section 502(a)(3), 29 U.S.C. § 1132(a)(3), fares no better.  That provision authorizes the award of "equitable" relief, a term that the Supreme Court has construed in the ERISA context to be limited to remedies that were "*typically* available in equity" in the days of the divided bench.  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) (emphasis in original).  What Plaintiffs seek here is neither more nor less than compensatory damages, a form of *legal* relief.  As such, Plaintiffs cannot recover under section 502(a)(3).

In short, the Amended Complaint suffers from a classic "square peg/round hole" problem:  It seeks to impose liability for alleged wrongdoing under a statute that does not cover the transactions at issue.  As a result, the Amended Complaint should be dismissed with prejudice.

## Factual Background

Before they retired, Plaintiffs Jerri E. Young and Patricia A. Walsh were participants in employer-sponsored 401(k) savings plans.  Walsh was a participant in the C and J Management Corporation retirement plan, and Young participated in the Restaurant Concepts, Inc. retirement plan (collectively, "the Plans").  *See* Am. Compl. ¶¶ 1-2.

The Plans entered into Service and Expense Agreements with Principal Life Insurance Company ("Principal Life"), a subsidiary of PFG.  *See* 7/1/02 FIA Service & Expense Agreement, Ex. 1; 11/7/05 FIA Service & Expense Agreement, Ex. 2; 4/27/01 FIA Service & Expense Agreement, Ex 3.[1]  Principal Life agreed to provide ministerial services to the Plans:

---

[1] The Court may consider these documents on a motion to dismiss.  "In this circuit, Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or opposition to the motion."  *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).  All documents that are "necessarily embraced" by the pleadings are fair game.  *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).  *See also Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997); *Yellen v. Hake*, 437 F. Supp. 2d 941, 964 n.3 (S.D. Iowa 2006).  The Amended Complaint is premised on the alleged fiduciary relationship between Defendants and the Plans.  Accordingly, the contracts

recordkeeping, government compliance and filing services, consulting services to help plan

sponsors work with legal counsel, certain optional services such as trust services, retirement

planning seminars, enrollment services, and asset holding services.  *Id.*  None of the agreements

between Principal Life and the Plans provided that Principal Life would act as a fiduciary to the

Plans or their participants.  On the contrary, the agreement for C and J Management specifically

disclaimed fiduciary status: "Nothing in this Agreement, nor in the provision of Services makes

us a party to, or a fiduciary or administrator regarding, the Plan or any Plan entity."  11/7/05 FIA

Service & Expense Agreement at 14, Ex. 2.

When Plaintiffs retired, for a time they left their 401(k) money in their former employers'

plans.  Plaintiffs then received letters from The Principal asking them to call to discuss "an

adjustment to your retirement account status."  Am. Compl. ¶¶ 101-02; Exs. 1-2 to Am. Compl.

The letters specifically disclosed that they were intended to promote sales of financial products

offered by PFG's member companies:

> Financial professionals are sales representatives for the members
> of The Principal Financial Group®.  Except under certain
> circumstances they do not represent, offer, or compare products
> and services of other financial services organizations.

Am. Compl. Exs. 1-2.

Plaintiffs allege that, in response to these letters, they called The Principal to discuss what

to do with their 401(k) funds after retirement.  The Amended Complaint alleges what was said in

---

between the Plans and Principal Life may be considered.  *See Stahl v. United States Dep't of
Agriculture*, 327 F.3d 697, 701 (8th Cir. 2003).  Similarly, the Amended Complaint specifically
refers to telephone calls between Plaintiffs and The Principal.  *See* Am. Compl. ¶¶ 5-6, 103-04.
Because these conversations are "necessarily embraced" by the complaint, this Court may
consider the entire conversations – not just Plaintiffs' characterizations of them – when deciding
this motion.  *See Enervations*, 380 F.3d at 1068-69.  Finally, Plaintiffs also referred to a Principal
prospectus in the Amended Complaint but chose not to attach it; that document too may be
considered in connection with this motion.

those calls, but the actual recordings of the calls – which were made and retained by The

Principal in accordance with securities regulations – may be considered in connection with this

motion.  *See supra* at 3 note 1.[2]  Those recordings are flatly inconsistent with Plaintiffs'

characterizations of the calls.  For example, Plaintiff Walsh alleges that she was told that "she

should not leave her money in her retirement plan account with her company."  Am. Compl. ¶

104.  In fact, the recording of the call shows that Walsh was told that "the first option you always

have is that you can continue to leave funds as is under C&J's plan as long as you need to."  Tr.

3/22/06 at 2, Ex. 4.  The sales representative continued, "we just want to make sure you know

what options you do have available.  Whether that is 'no, I don't want to do anything, I want to

leave it as is,' well, that's great."  Tr. 3/22/06 at 2, Ex. 4.  The representative offered Walsh the

option of putting her money into an individual retirement account ("IRA") and said, "If we can

help you with that, let us know.  Or, you can do that about anywhere."  *Id.* at 4.  Because Walsh

had indicated that her accountant was on vacation, the representative suggested, "Just keep in

touch after you talk to your [ ] accountant."  *Id.*

Walsh also alleges that she was advised not to transfer her assets to another investment

company.  Am. Compl. ¶ 104.  There was no such discussion in Walsh's initial call to The

Principal.  In a follow-up call initiated by Walsh several months later, Walsh at first indicated

that she intended to transfer her 401(k) money to Schwab, where she had another account.  The

sales representative offered to send her the forms to make that change, but also said, "if you

wanted to, you could definitely stay with us here of course at The Principal."  Tr. 7/26/06 at 1-2,

---

[2] The transcripts of the relevant calls are attached as exhibits to this brief, with certain personal
information such as Social Security numbers redacted.  The Principal will provide Plaintiffs'
counsel with complete copies of the tapes of the calls.

Ex. 5.  After discussing the matter, Walsh indicated that she would like to roll over her 401(k) money into an IRA with The Principal.  *Id.* at 4.

The other Plaintiff, Jerri Young, made her first call to The Principal on May 31, 2006 – *before* she claims to have received a so-called "forced call" letter from The Principal.  Am. Compl. ¶ 103; Ex. 1 to Am. Compl.; Tr. 5/31/06, Ex. 6.  The recording of the call shows that Young told the sales representative, "I have taken retirement, and I was wondering what my options are."  Tr. 5/31/06 at 1, Ex. 6.  Young alleges that she was told that "she should not leave her money in her retirement plan account with her company," Am. Compl. ¶ 103, but the sales representative actually told her, "You do have a choice.  You can keep it with them [the 401(k) plan]; however, there is not much of an advantage to keep the money with them."  Tr. 5/31/06 at 8, Ex. 6.  The representative also told Young that she might consider consolidating her accounts in a Principal product and highlighted several options:  "[Y]ou can invest that money any way that you want to, whether it is into a mutual fund, or an annuity or stocks."  Tr. 5/31/06 at 4, Ex. 6.  After hearing about several investment options, Young requested a performance chart for The Principal's mutual funds and other information, and the representative promised to send her that information.  *Id.* at 4, 8, 12-13.  The sales representative directed Young to The Principal's website, where she could review more information about the funds the representative had suggested.  *Id.* at 16-17.

Walsh and Young both eventually rolled over their 401(k) money into IRAs and invested in The Principal's J-Share class of mutual funds.  Am. Compl. ¶¶ 4-6.  Mutual funds are divided into multiple classes, with the main difference among the classes being the expenses associated with them.  SEC Website, Invest Wisely:  An Introduction to Mutual Funds, http://www.sec.gov/investor/pubs/inwsmf.htm (last visited Dec. 20, 2007).  Principal offers J-

Share mutual funds to retirement plan investors, and Plaintiffs allege that this class of shares is more expensive than other classes of shares that could be (and in Plaintiffs' view, should be) offered to people situated similarly to Plaintiffs.  Am. Compl. ¶ 40.

Both Walsh and Young admit that they received a prospectus for the J-Share mutual funds before deciding to invest.  *Id.* ¶¶ 103-04.  The prospectus contains information about J-shares, including the expenses associated with investing in them.  *See* Principal Investors Fund, Inc., Class J Shares Prospectus, May 29, 2007,

http://www.principal.com/allweb/docs/ris/investments/prospectus/1/fv208a.pdf, excerpts at Ex. 7.

## <u>Argument</u>

### I.      Plaintiffs Must Allege Facts, Not Just Labels And Conclusions, Showing That They Are Entitled To Relief

As the Supreme Court recently made clear, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  The Court overruled the old maxim in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  That standard, the Court held, "is best forgotten as an incomplete, negative gloss on an accepted pleading standard."  *Twombly,* 127 S. Ct. at 1960.  Instead, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 1964-65.  Plaintiffs cannot avoid dismissal by presenting bare assertions as legal conclusions. *Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1062 (8th Cir. 2005).

In the ERISA context, these standards take on a special importance.  The Supreme Court has repeatedly stated that "ERISA is a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system."  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (citations and internal quotation marks omitted).  As a result, the Court has been "especially reluctant to tamper with the enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text."  *Id.* (same).  "Indeed, we have noted that ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."  *Id.* (same; emphasis in original).

As explained below, Plaintiffs are attempting to apply ERISA to transactions that are not covered by that statute.  This Court need not decide whether Plaintiffs might have a viable cause of action under some other law, be it state or federal.  (Plaintiffs initially brought a separate lawsuit under the federal securities laws, but they have voluntarily dismissed that case.)  The only claims that Plaintiffs are pursuing arise under ERISA, but they have failed to allege facts that are "enough to raise a right to relief above the speculative level."  *See Twombly*,  127 S. Ct. at 1965.

## II.    Plaintiffs Lack Standing To Sue Under ERISA

To have standing to sue, Plaintiffs must allege that they qualify as "a participant, beneficiary or fiduciary," as those terms are defined in ERISA.  29 U.S.C. §§ 1132(a)(2) & (a)(3); 29 U.S.C. §§ 1002(7), (8), & (21) (defining terms); *see also Adamson v. Armco, Inc.*, 44 F.3d 650, 654 (8th Cir. 1995).[3]  Plaintiffs do not and cannot claim that they are "beneficiaries" or "fiduciaries," and they acknowledge that they are only "former" participants – not current

---

[3] Section 1132(a)(2) also authorizes the Secretary of Labor to sue, but that provision obviously has no application here.

participants – in their respective 401(k) plans.  Am. Compl. ¶¶ 1-2.  The Eighth Circuit has held

that "'current participant status is the relevant test'" for standing to sue under ERISA.  *Adamson*,

44 F.3d at 654 (quoting *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1534-35 (10th Cir. 1993)).

"The fact that [plaintiffs] were plan participants in the past is irrelevant."  *Id.*  Thus, Plaintiffs'

concession that they are no longer "participants" in the Plans means that they lack standing, and

their claims must be dismissed.  *See generally Firestone Tire & Rubber Co. v. Bruch*, 489 U.S.

101, 117-18 (1989) (discussing ERISA standing requirements); *Nechis v. Oxford Health Plans,*

*Inc.*, 421 F.3d 96, 100-01 (2d Cir. 2005) (upholding dismissal of former participant's ERISA

claim for lack of standing).

Plaintiffs cannot argue that they qualify as "participants" even though they no longer

participate in the Plans.  While ERISA defines "participant" to include a "former employee" who

"is or may become eligible to receive a benefit of any type from an employee benefit plan," 29

U.S.C. § 1002(7), the Supreme Court has interpreted this to mean that a former employee must

either "have a reasonable expectation of returning to covered employment" – which Plaintiffs do

not allege – or "have a colorable claim to vested benefits."  *Firestone*, 489 U.S. at 117-18.  In

*Graden v. Conexant Sys., Inc.*, 496 F.3d 291 (3d Cir. 2007), the Third Circuit summarized the

law on ERISA standing under the "vested benefits" standard.  *Graden* teaches that "the question

that properly governs these cases" is how much money the plaintiff was entitled to receive "on

the day of his retirement."  *Id.* at 300.  In other words, if the plaintiff claims that a breach of

fiduciary duty caused his benefits to be lower at the time he took his money out of the plan, then

he has a "[colorable] claim for vested benefits" and may qualify as a participant (and therefore

may have standing under ERISA).  *Id.*  "If, on the other hand, he claims that his benefits were all

he was entitled to under the plan the day they were paid but that he should yet recover something

more, then he presses a claim for something other than vested benefits and is not entitled to standing." *Id.*

Application of these principles here makes clear that Plaintiffs lack standing. They do not allege that they received a penny less than they were entitled to when they took their money out of their Plans; rather, they allege that they suffered harm *after* they took their money out of the Plans, in the form of higher fees. *See* Am. Compl. ¶¶ 121-22. As a result, Plaintiffs lack standing, and their ERISA claims should be dismissed with prejudice.

## III.   Defendants Are Not ERISA Fiduciaries

Plaintiffs provide details about The Principal's alleged scheme to convince them to invest in J-Share mutual funds, but they allege few facts about a basic element of their claim: Defendants' alleged status as ERISA fiduciaries. Absent a fiduciary relationship between Plaintiffs and Defendants, the ERISA claims fail. *See Mertens*, 508 U.S. at 262; *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277-80 (11th Cir. 2005). And a fiduciary relationship does not arise merely because a plaintiff has purchased a financial product that may somehow be connected with a retirement plan. As the Eighth Circuit has explained, "'Simply urging the purchase of its products does not make an insurance company an ERISA fiduciary with respect to those products.'" *Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214, 217 (8th Cir. 1993) (quoting *Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y*, 841 F.2d 658, 664 (5th Cir. 1988)).

The touchstone for becoming a fiduciary under ERISA is "discretion." *See Maniace v. Commerce Bank of Kansas City*, 40 F.3d 264, 267 (8th Cir. 1994). Specifically, ERISA defines "fiduciary" as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or

control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  "[T]he power to act for the plan is essential to status as a fiduciary under ERISA."  *Assocs. in Adolescent Psychiatry v. Home Life Ins. Co.*, 941 F.2d 561, 570 (7th Cir. 1991); *Martin v. Feilen*, 965 F.2d 660, 668-69 (8th Cir. 1992).  As explained below, Plaintiffs have not alleged facts that satisfy any of the statutory criteria for becoming a fiduciary.

A.   **Plaintiffs Have Not Alleged Facts Which Demonstrate That The Principal Was Given Or Exercised Control Over The Plans As Required By 29 U.S.C. § 1002(21)(A)(i) And (iii)**

The key to becoming a fiduciary under §§ 1002(A)(i) and (iii) is discretion.  "Subsection one imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted.  Subsection three describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is actually exercised."  *Olson v. E.F. Hutton & Co.*, 957 F.2d 622, 625 (8th Cir. 1992).

Plaintiffs devote a single paragraph to the allegation that The Principal qualifies as a fiduciary under §§ 1002(A)(i) and (iii).  In contravention of *Twombly*, Plaintiffs merely parrot the statute and quote marketing materials which have no contractual force:

Satisfying ERISA [§ 1002(21)(A)(i) and (iii)], Principal possesses or exercises discretionary authority or discretionary control respecting management of plans by providing complete plan management services in its "full service" plan packages it sells employers so that employers can "spend time managing [their] business, not [their] plans" and possessing or exercising discretionary management functions in providing plan administration services.

Am. Compl. ¶ 72.  The allegations do not describe any specific ways in which The Principal supposedly exercises discretion over plan assets.  Indeed, the entity with a contractual

relationship with the Plans is not PFG or Princor, but Principal Life.  Even if Plaintiffs could

bootstrap that contractual relationship into a relationship with Defendants, the agreements

indicate that Principal Life provides non-discretionary services; it does not have discretionary

control.  *See Reich v. Lancaster*, 55 F.3d 1034, 1046-47 (5th Cir. 1995); *Molasky v. Principal

Mut. Life Ins. Co.*, 149 F.3d 881, 884 (8th Cir. 1998).  This is not enough to confer fiduciary

status.  *Kerns*, 992 F.2d at 217-18.[4]

> **B.      Plaintiffs Have Not Alleged Facts Which Demonstrate That The
> Principal Became A Fiduciary by Offering Investment Advice For A
> Fee Under 29 U.S.C. § 1002(21)(A)(ii)**

Plaintiffs also allege that The Principal became a fiduciary under 29 U.S.C. §

1002(21)(A)(ii) by "rendering investment advice" to the Plans.  Am. Compl. ¶¶ 73-77.  The

Department of Labor has issued an authoritative regulation interpreting this provision of ERISA.

29 C.F.R. § 2510.3-21(c).  Under the regulation, to show that a defendant is a fiduciary, a

plaintiff must go beyond showing that "investment advice," in the lay sense of the term, was

given, and allege at least one of two additional elements.  One element requires a plaintiff to

demonstrate that the defendant had "discretionary authority or control" over the purchase and

sale of plan assets.  *Id.* § 2510.3-21(c)(ii)(A).  This may happen, for example, when a broker

trades a client's investments without permission from the client.  *See Olson*, 957 F.2d at 627.

Plaintiffs here make no allegations of this sort; to the contrary, they allege that they specifically

authorized the purchase of J-Share mutual funds.  Am. Compl. ¶¶ 5-6, 105.

---

[4] Department of Labor regulations provide guidance about what ministerial tasks may be
performed without becoming a fiduciary.  29 C.F.R. § 2509.75-8.  These tasks include
recordkeeping, preparation of government reports, collection and application of plan
contributions, and application of various eligibility rules, all of which are Principal Life's
responsibilities as articulated in the agreements.  *See* Exs. 1-3.

A plaintiff can also establish fiduciary status by showing that (1) the defendant made investment recommendations to the retirement plan on a regular basis, (2) the investment advice was given pursuant to an agreement with the plan that the defendant would give such advice, (3) the advice served as the primary basis for investment decisions with respect to plan assets, and (4) the investment advice was individualized to the needs of the plan.  29 C.F.R. § 2510.3-21(c)(ii)(B).  The Eighth Circuit has held this section should be analyzed "by first determining 'whether under the regulation there existed a mutual agreement or understanding between the parties that [the alleged fiduciary's] advice would be the primary basis for the Plan's investment decisions.'"  *Olson*, 957 F.2d at 626 (quoting *Farm King Supply, Inc. v. Edward D. Jones & Co.*, 884 F.2d 288, 293 (7th Cir. 1989)).

Plaintiffs have failed to allege facts supporting any of these elements.  As a threshold matter, they have offered no allegations about investment recommendations to the *Plans*, as opposed to former *participants* such as Plaintiffs.  The Amended Complaint alleges that the "investment advice" was given to individual participants, not to the Plans.  Indeed, all of the supposed "investment advice" that Plaintiffs complain about involved the Plaintiffs' options for investing if they chose to take money *out* of the Plans and invest it elsewhere – not how to invest within the Plans.

Even setting aside those obstacles, Plaintiffs have not alleged that the advice they received was given pursuant to an agreement between The Principal and the Plans, as required by the regulation.  *See Olson*, 957 F.2d at 626; *Brown v. Roth*, 729 F. Supp. 391, 397 n.6 (D.N.J. 1990) (plaintiff failed to show that defendant was a fiduciary because he "presented no factual basis indicating an agreement to provide regular investment advice").  The agreements between The Principal and the Plans say nothing about the provision of investment advice to the Plans.

*See* Exs. 1-3.  Nor was the advice allegedly given on a regular basis.  *See Schloegel v. Boswell*, 994 F.2d 266, 273 (5th Cir. 1993) (defendants not fiduciaries in part because they did not provide investment advice "on a regular basis"); *Anoka Orthopaedic Assocs. v. Mutschler*, 709 F. Supp. 1475, 1483 (D. Minn. 1989) (same).  Plaintiffs allege that they received "advice" from The Principal only once – upon their retirement – which hardly qualifies as "regular" investment advice.  *See* Am. Compl. ¶¶ 103-04.

Plaintiffs also have not alleged that the advice served as the "primary basis" for their investment decisions.  *Schloegel*, 994 F.2d at 273.  To the contrary, Walsh stated in her call to The Principal that she wanted to consult with her accountant before making any decisions (Tr. 3/22/06 at 2-3, Ex. 4), while Young stated from the beginning of the call – before she received any of the alleged "advice" – that she already intended to move her money out of the 401(k) plan and simply wanted to know about her options.  Tr. 5/31/06 at 1, Ex. 6.

Finally, Plaintiffs have not alleged that the advice they received was "individualized." They allege that The Principal gave the same advice – "invest in J-Shares" – to numerous retirement plan participant clients.  Am. Compl. ¶ 58.  This is not "individualized" advice; it is the opposite, which is not surprising in light of Plaintiffs' allegations that The Principal tried to steer all callers in the same direction and the fact that the letters to Plaintiffs disclosed that the representatives were selling Principal products.  *Id.* ¶ 32.  *See also Blevins Screw Prods., Inc. v. Prudential Bache Sec., Inc.*, 835 F. Supp. 984, 987 (E.D. Mich. 1993) (dismissing ERISA claim because defendant's alleged advice was not "individualized …[to] the particular needs of the Plans").  As was the case in *Consolidated Beef Industries, Inc. v. New York Life Insurance Co.*, 949 F.2d 960, 965 (8th Cir. 1991), The Principal "was not providing investment advice, but was instead selling [the] company's [investment] products."  *Accord Farm King Supply*, 884 F.2d at

14

292 (finding no fiduciary relationship where "the relationship was simply salesmanship, matching the customer's desires with available inventory").  As a result, The Principal cannot be considered a fiduciary.

**IV.  Even If The Principal Were An ERISA Fiduciary, There Was No Breach Of Any Duty To Plaintiffs**

If the Court were to find that Plaintiffs have alleged statutory standing under ERISA and have also alleged sufficient facts to proceed on the issue of Defendants' status as fiduciaries, the Court should nevertheless dismiss the Amended Complaint because Plaintiffs have not alleged that The Principal breached any duty to them.  Plaintiffs claim that Defendants breached some fiduciary duty by failing to provide them with adequate information about J-Share mutual funds. Am. Compl. ¶¶ 40, 42, 45.  To prevail on a such a failure-to-disclose claim, a plaintiff must establish two elements in addition to the fiduciary status of the defendant: (1) the fiduciary's failure to communicate material facts, and (2) a showing that "those material facts could have adversely affected his interests as a plan member."  *Borneman v. Principal Life Ins. Co.*, 291 F. Supp. 2d 935, 957 (S.D. Iowa 2003).  However, a failure to disclose is not always a breach.  If the failure to disclose information is lawful, "the failure to disclose cannot be a breach of fiduciary duty."  *Anderson v. Resolution Trust Corp.*, 66 F.3d 956, 960 (8th Cir. 1995).

Plaintiffs allege that The Principal should have informed them that it stood to make a profit when Plaintiffs rolled their retirement funds into J-Shares, and that it did not provide enough information about J-Shares to permit Plaintiffs to make an informed decision about investing in them.  Am. Compl. ¶¶ 115-18.  The allegations of the Amended Complaint and the documents "necessarily embraced" by it (*see supra* at 3 note 1) prove that this claim is meritless. The Principal disclosed in the letter sent to each Plaintiff that the people who would answer Plaintiffs' calls were selling Principal products.  Am. Compl. ¶¶ 36, 46; Exs. 1 & 2 to Am.

Compl.  And while Plaintiffs allege that the J-Shares were not the best possible investments for them, Am. Compl. ¶¶ 116-18, The Principal disclosed the information necessary to make those decisions in the prospectus.  Plaintiffs admit that The Principal sent them the J-Shares prospectus before they decided to invest in these funds.  Am. Compl. ¶¶ 103-04.  The prospectus gave them the information that they allege was not revealed, including expense ratios, performance results and other costs.  *See, e.g.*, Ex. 7.  By using this information, Plaintiffs were free to make their own decisions about what constituted the best investments for their individual circumstances, and could have easily compared the expenses of their current investments with the expenses of the J-Share investments.  If Plaintiffs chose not to read the disclosure in the prospectus, they cannot now hold The Principal liable based on a theory of nondisclosure.

## V.      The Relief Plaintiffs Seek Is Not Available Under ERISA

Even if Plaintiffs could somehow overcome all of the hurdles described above, they would still have no claim under ERISA.  Because of ERISA's "carefully crafted and detailed enforcement scheme," courts do not strain to find a cause of action that is not explicitly authorized by the text of the statute.  *Great-West,* 534 U.S. at 209.  Yet that is what this Court would have to do to find that Plaintiffs have stated a cause of action under either of the provisions invoked by Plaintiffs, sections 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2) & (a)(3).

### A.      Plaintiffs Have No Viable Claim Under Section 502(a)(2) Because They Are Seeking Individualized Relief, Not Relief On Behalf Of A Plan

Plaintiffs acknowledge that "the general thinking would deny that they have standing to bring this claim under ERISA § 502(a)(2)."  Am. Compl. at 32 n.1.  The reason is simple: Section 502(a)(2) is narrowly tailored to impose personal liability on fiduciaries for "losses to the plan," not losses to individuals resulting from a breach of fiduciary duty.  29 U.S.C. § 1132(a)(2); *id.* § 1109(a); *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (Section 502(a)(2)

"does not provide a remedy for individual beneficiaries."). As the Supreme Court explained in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 140 (1985), the phrase "losses to the plan" is meant to allow for recovery to "the benefit of the plan as a whole." The Court went on to observe, "A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 142. *See also Fisher v. J.P. Morgan Chase & Co.*, 230 F.R.D. 370, 375 (S.D.N.Y. 2005).

Plaintiffs here do not seek to confer any benefit whatsoever on their former Plans. If Defendants were required to pay a judgment in this case, the money would go to Plaintiffs – not to the Plans, in which Plaintiffs are no longer participants. As a result, Plaintiffs have no claim under section 502(a)(2).

**B.      Plaintiffs Have No Claim Under Section 502(a)(3) Because They Seek Damages, Not Equitable Relief**

Section 502(a)(3) of ERISA authorizes equitable relief only, not monetary relief. 29 U.S.C. § 1132(a)(3). In *Mertens*, the Supreme Court held that relief under this provision is limited to remedies that are "*typically* available in equity." 508 U.S. at 256 (emphasis in original). "Money damages are, of course, the classic form of *legal* relief" and therefore cannot be awarded under section 502(a)(3). *Id.* at 255 (emphasis in original). Where, as here, plaintiffs attempt "to compel the defendant to pay a sum of money," the suit is "[a]lmost invariably" legal in nature and thus outside the scope of section 502(a)(3). *See Great-West*, 534 U.S. at 210 (citation omitted); *see also Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1062 (8th Cir. 2006) ("an award of monetary damages is a legal remedy, not an equitable one").[5]

---

[5] The Supreme Court's decision in *Sereboff v. Mid Atlantic Medical Services, Inc.,* 126 S. Ct.

Plaintiffs attempt to avoid this precedent by relabeling their request for damages as a request for "restitution."  *See* Am. Compl., Prayer for Relief at ¶¶ D-E.  For purposes of a motion to dismiss, however, what matters are the factual allegations, not the label that plaintiffs put on them.  *See Twombly*, 127 S. Ct. at 1964-65.  In the context of section 502(a)(3), the Eighth Circuit has explained that courts should focus on the substance or "origin" of the remedy sought, not on the label assigned to it by plaintiffs.  *Knieriem*, 434 F.3d at 1061; *see also Mertens*, 508 U.S. at 255 ("[a]lthough they often dance around the word, what [plaintiffs] in fact seek is nothing other than compensatory *damages* – monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties").  In *Knieriem*, the plaintiff claimed to seek "restitution, surcharge, and 'compensation to Plaintiff for defendants' breach of fiduciary duty,'" but the court held that the requested relief was "essentially compensatory" and upheld the dismissal of the claim under section 502(a)(3).  *Knieriem*, 434 F.3d at 1061.

Here, Plaintiffs are seeking relief that, as in *Knieriem*, *Mertens* and *Great-West*, is "essentially compensatory" in nature – precisely the type of relief that is not available under section 503(a)(3).  Even Plaintiffs' purported claim for "restitution" is really a claim for monetary relief.  Restitution may be either legal or equitable, but it is equitable only if the plaintiff is seeking the return of a particular *res* in the custody of the defendant.  *See Great-West*, 534 U.S. at 212-15.  Applying this standard, the Fifth Circuit recently held that section 502(a)(3) could not support an allegedly "restitutionary" claim for benefits that the plaintiff claimed she would have received but for the defendant's breach of fiduciary duty.  *Amschwand v. Spherion Corp.*, No. 06-20346, 2007 WL 3027072, at *1 (5th Cir. Oct. 18, 2007).  Similarly, in this case

---

1869 (2006), "reinforces" the requirements that (a) "the *nature of the relief sought* under § 502(a)(3) be 'typically equitable,'" and (b) "the *cause of action giving rise to the claim* be generically equitable as well."  *See Amschwand v. Spherion Corp.*, No. 06-20346, 2007 WL 3027072, at *3 (5th Cir. Oct. 18, 2007).

Plaintiffs say they are seeking "restitution" to "compensate" them "for the benefits of their plans

of which they have been deprived" (Prayer for Relief ¶ E), as well as "restitution" for the

allegedly excessive fees, costs and expenses that they allegedly paid.  *Id.* ¶ E.  These are all

forms of compensatory relief; they seek to impose "personal liability" on defendants, not "the

imposition of a constructive trust or equitable lien on particular property."  *Great-West*, 534 U.S.

at 214.  As such, they are not available forms of relief under section 502(a)(3).

**Conclusion**

For the reasons articulated above, Plaintiffs' claims against The Principal should be

dismissed with prejudice.

Respectfully submitted,

PRINCIPAL FINANCIAL GROUP, INC. and PRINCOR
FINANCIAL SERVICES CORPORATION

By:     /s/ Eric S. Mattson
        One of their attorneys

Brian L. Campbell
Faegre & Benson LLP
Suite 3100
801 Grand Avenue
Des Moines, IA 50309-0836
Email:  bcampbell@faegre.com
Phone:  (515) 248-9010

Joel S. Feldman
Mark B. Blocker
Eric S. Mattson
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
Email: jfeldman@sidley.com
        mblocker@sidley.com
        emattson@sidley.com
Phone: (312) 853-7000

**PROOF OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing instrument was

served upon one of the attorneys of record for each party to the above-entitled cause through the

Court's CM/ECF electronic filing system on the 21st day of December, 2007.


/s/ Eric S. Mattson

Brian P. Galligan
Richard H. Doyle, IV
Timm W. Reid
James A. Albert
Galligan, Doyle, Reid & Galligan, P.C.
300 Walnut Street, Suite 5
Des Moines, IA 50309-2239