# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| JERRI E. YOUNG and PATRICIA A. WALSH, on behalf of themselves and all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) | Civil Action No. 4:07-CV-00386-RP-CFB |
| v. ) ) | Judge Robert W. Pratt |
| PRINCIPAL FINANCIAL GROUP, INC. and PRINCOR FINANCIAL SERVICES CORPORATION, ) ) ) ) | |
| Defendants. ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants Principal Financial Group, Inc. and Princor Financial Services Corporation (collectively, "The Principal") submit this reply in support of their motion to dismiss Plaintiffs' Amended Class Action Complaint for Violations of the Employee Retirement Income Security Act ("Amended Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).

## Introduction

In their response to The Principal's motion to dismiss, Plaintiffs have attempted to distance themselves from the very events that purport to form the basis for their claims – the so-called "forced call" letters and the content of the actual phone calls Plaintiffs allegedly made in response to those letters – because they show that Plaintiffs have no claim under ERISA. The letters and the phone calls demonstrate that Plaintiffs were not coerced into investing in J-Share mutual funds and that The Principal did not misrepresent the investments to Plaintiffs. Because Plaintiffs cannot repair the defects of the Amended Complaint, they instead rely on excited

rhetoric and unfair attacks upon The Principal and its counsel. This rhetoric cannot mask the truth: the Amended Complaint fails to state a claim under ERISA and should be dismissed.

Plaintiffs also rely on *LaRue v. DeWolff, Boberg & Associates, Inc.*, 128 S. Ct. 1020 (2008), and argue that this recent Supreme Court opinion "forecloses most of Defendants' arguments." Am. Resp. at 4. This is a gross exaggeration. *LaRue* affects only one strand of one of The Principal's arguments, namely the contention that – as Plaintiffs conceded in their Amended Complaint – ERISA section 502(a)(2) applies only to claims that are pursued on behalf of a retirement plan as a whole, not claims pursued on behalf of individual plan participants. *See* Def. Br. at 16-17; Am. Compl. at 32 n.1. That argument, which took up less than a page of The Principal's opening brief, may now be foreclosed by *LaRue*, but there are still multiple independent grounds requiring dismissal of Plaintiffs' complaint.

## Argument

### I. Plaintiffs Do Not Fit The Standing Exception Recognized In *Adamson*

Plaintiffs attack The Principal's brief as containing "highly misleading" citations about standing to sue under ERISA. Am. Resp. at 11. In fact, it is Plaintiffs' brief that misapplies the law. The law on this point is clear: To have standing to sue under ERISA, Plaintiffs must qualify as plan "participants," which in this context means that they must either expect to return to employment or must have a "colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989). Plaintiffs fall into neither of these categories.

As to the first category, Plaintiffs make no claim that they expect to return to employment. As to the second, Plaintiffs do not explain why they have a colorable claim to vested benefits. They suggest that they are similarly situated to the plaintiff in *LaRue*, but that case shows that Plaintiffs here do *not* have a colorable claim to vested benefits. In *LaRue*, plaintiff claimed that he suffered a $150,000 loss while his money was invested in his retirement

plan, and the Court rejected an argument that, simply because he later left the plan, he was divested of standing to sue over the alleged breach. 128 S. Ct. at 1026. Here, by comparison, Plaintiffs claim that they suffered damages only *after* they left the plans. As a result, they do not have a claim, colorable or otherwise, for any benefits due them via the plan. Because they only claim to have suffered damages once they became former participants, they have no standing under ERISA.

Plaintiffs, however, also claim that they come within an exception to this rule, recognized by the Eighth Circuit in *Adamson v. Armco, Inc.*, 44 F.3d 650, 654-55 (8th Cir. 1995), which held that former participants may have standing if the loss of their status as participants was the result of a breach of fiduciary duty. But Plaintiffs have misapplied the exception. As the Eighth Circuit explained, "This exception only applies when the fiduciary's breach of duty has deprived the § 502(a)(2) or § 502(a)(3) plaintiff of participant status. It does not apply to claimants whose loss of participant status resulted from their own actions." *Id.* at 655. This second sentence perfectly describes Plaintiffs here. The allegations in the Amended Complaint and the documents "necessarily embraced by" it – which are attached to The Principal's opening brief[1] – show that Plaintiffs chose to remove their retirement funds from their employers' 401(k) plans. No one forced them to do so. *See* Def. Br. at 4-7.

## II.  Plaintiffs Have Not Alleged That The Principal Is A Fiduciary Under ERISA

Contrary to Plaintiffs' suggestion, courts can and do determine on a motion to dismiss that a defendant is not an ERISA fiduciary. *See, e.g., Conemaugh STAR Plan Welfare Benefit Plan & Trust v. Fisher*, No. 3:07cv00831, 2008 WL 544733, at *4 (D. Conn. Feb. 25, 2008)

---

[1] In their initial response brief, Plaintiffs claimed that they were filing a motion to strike these exhibits. Resp. at 7 n.2. No such motion has been filed. In their amended response brief, Plaintiffs complain about the exhibits, Am. Resp. at 9 n.9, but they cite no authority that might require this Court to disregard them. *But cf.* Def. Br. at 3 n.1.

("even after I accept as true all factual assertions in the complaint, the allegations fail to establish that the STAR Plan is a fiduciary").

### A. The Principal Does Not Qualify As A Plan "Administrator"

Plaintiffs argue that The Principal was an ERISA fiduciary because it served as the "plan administrator" – a term of art under ERISA – to their 401(k) plans. *See* Am. Compl. ¶¶ 1-2; *see also* Am. Resp. at 14-15. Plaintiffs cite a laundry list of responsibilities that The Principal allegedly handled for their plans (Am. Resp. at 16-17) but these allegations cannot show that The Principal was a plan "administrator" and therefore cannot confer fiduciary status on The Principal.

The term "administrator" is specifically defined in ERISA:

> The term "administrator" means – (i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A). Thus, under the statute, it is the plan document that determines who qualifies as the "administrator" of the plan. The plan documents for Plaintiffs' former plans provide that the plan administrator is the plan sponsor, not The Principal. *See* C&J Management Services Adoption Agreement, at 2, Ex. 1; Restaurant Concepts, Inc. Savings Plan, at 14, Ex. 2. As a result, The Principal cannot be the "administrator" of those plans.

Plaintiffs have also cited a list of duties that The Principal performs for their former plans. These duties are nothing more than the ministerial tasks of the designated recordkeeper for the plans. *See* Am. Resp. at 16-17. Ministerial duties do not transform a record keeper into a plan "administrator" under ERISA. 29 U.S.C. § 1002(21)(A); *Anoka Orthopaedic Assocs. v. Lechner*, 910 F.2d 514, 517 (8th Cir. 1990).

4

**B.     The Principal Did Not Exercise Discretion Over Management of the Plans**

Plaintiffs are also mistaken when they assert that The Principal exercised discretionary control over the management of the plans. Plaintiffs point to three actions they claim shows the exercise of discretion, but as explained below, these actions do not support a claim of fiduciary status.

First, Plaintiffs point to their allegation that The Principal had access to plan participants' names, addresses, social security numbers, and financial data. Am. Resp. at 4, 16. This says nothing about any "discretion" over management of the Plans; it is part and parcel of the duties of a non-fiduciary service provider. Plaintiffs cite no authority to support the notion that having access to social security numbers and other data somehow equals the exercise of discretion. If it did, then every recordkeeper for every pension plan in the country would be considered an ERISA fiduciary.

Second, Plaintiffs argue that the sending of "forced call" letters somehow indicates that The Principal exercised control over the Plans. Am. Resp. at 16. This allegation puts the cart before the horse; it begs the question of whether The Principal was a fiduciary in the first place. The sending of the "forced call" letters may be relevant to the claim that The Principal *breached* its fiduciary duty (or some other duty), but it is irrelevant to the question whether it served as a fiduciary in the first place. *See* 29 C.F.R. § 2510.3-21.

Finally, Plaintiffs' allegation that The Principal sold J-Shares is again irrelevant to the question of fiduciary status. Like the allegation about the sending of "forced call" letters, this allegation may be relevant to the claim of some sort of breach of duty, but it says nothing about the critical question of whether The Principal served as an ERISA fiduciary. Indeed, the sale of J-Shares does not even relate to actions taken while the individuals were plan participants.

### C. Plaintiffs Did Not Allege That The Principal Exercised Control Over Plan Assets

Plaintiffs' argument that The Principal was a fiduciary because it exercised control over assets in the 401(k) plans fails for similar reasons. Plaintiffs cite *FirsTier Bank N.A. v. Zeller*, 16 F.3d 907, 911 (8th Cir. 1994), for the proposition that ERISA "imposes fiduciary duties . . . *whenever* one deals with plan *assets*." However, Plaintiffs have not alleged any facts suggesting that The Principal had control over plan assets. Instead, they allege that The Principal operated a sales center that promoted the sale of J-shares without providing customers with all material information about the product being promoted. Again, this begs the question: Plaintiffs are trying to turn their allegations that The Principal *breached* its fiduciary duty into an allegation that it *was* a fiduciary in the first place.

### D. The Principal Did Not Offer Investment Advice For A Fee

Finally, Plaintiffs' response fails to show that The Principal became a fiduciary by rendering investment advice for a fee within the meaning of ERISA. To show that The Principal became a fiduciary under this provision of ERISA, Plaintiffs must allege, among other things, that the investment advice was given pursuant to an agreement with their 401(k) plans. 29 C.F.R. § 2510.3-21(c)(ii)(B); *see* Def. Br. at 12-13. Plaintiffs concede that there was no such agreement, but attempt to alter the law by arguing that there is no such requirement in the context of participant-directed investments. Am. Resp. at 18-19. They cite no support for this novel interpretation. Because they are unable to allege that The Principal gave advice for a fee pursuant to an agreement, Plaintiffs cannot show that The Principal was a fiduciary. 29 C.F.R. § 2510.3-21.

Plaintiffs further undercut this claim by admitting that the advice was not "individualized," as required in order to confer fiduciary status, but instead was uniform. 29

C.F.R. § 2510.3-21(c)(ii)(B); Am. Resp. at 5 ("Unknown to the Plaintiffs, the 'Benefits Counselors' gave *uniform* advice to every participant who called.") (emphasis added). Plaintiffs have thus conceded that The Principal was not offering investment advice that was "individualized." Accordingly, any such "investment advice" could not have turned The Principal into a fiduciary.

### III. The Principal Has Not Breached Any Duty To Plaintiffs

As The Principal explained in its opening brief, the Amended Complaint does not allege a breach of duty under ERISA. Def. Br. at 15-16. Plaintiffs all but ignore this problem in their response brief (Am. Resp. at 19-20) because they have no answer to two basic facts: first, the "forced call" letters disclosed the fact that Plaintiffs would be contacting a sales center (Def. Br. at 4) and second, The Principal provided Plaintiffs with the J-Share prospectus before the Plaintiffs decided to invest in those funds. Am. Compl. ¶ 103-04; Def. Br. at 6-7. The prospectus disclosed the fees, expense ratios and other information which allowed Plaintiffs to compare fees and decide whether it made more sense for them to remain in their current plans or to roll over the assets into an IRA. Ex. 7 to Def. Br. For this reason as well, Plaintiffs' claim for breach of fiduciary duty is not supported by the allegations in the Amended Complaint.

### Conclusion

For the reasons articulated above and in The Principal's opening brief, Plaintiffs' claims against The Principal should be dismissed with prejudice.

Respectfully submitted,

PRINCIPAL FINANCIAL GROUP, INC. and PRINCOR
FINANCIAL SERVICES CORPORATION

By: /s/ Eric S. Mattson
      One of their attorneys

Brian L. Campbell
Whitfield & Eddy, PLC
317 Sixth Avenue
Suite 1200
Des Moines, IA 50309-4195
Email: campbell@whitfieldlaw.com
Phone: (515) 288-6041

Joel S. Feldman
Mark B. Blocker
Eric S. Mattson
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
Email: jfeldman@sidley.com
       mblocker@sidley.com
       emattson@sidley.com
Phone: (312) 853-7000

CH1 4172107v.1