IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| JERRI E. YOUNG and PATRICIA A. WALSH, on behalf of themselves and all others similarly situated, | * * * * | 4:07-cv-00386 |
| Plaintiffs, | * * | |
| v. | * * | |
| PRINCIPAL FINANCIAL GROUP, INC., and PRINCOR FINANCIAL SERVICES CORPORATION, | * * * * | ORDER ON MOTION TO DISMISS |
| Defendants. | * * | |

Before the Court is the Defendants', Principal Financial Group, Inc. ("Principal") and

Princor Financial Services Corporation ("Princor") (collectively "Defendants"), Motion to

Dismiss Amended Complaint, filed December 21, 2007.  Clerk's No. 19.  Plaintiffs, Jerri E.

Young and Patricia A. Walsh, on behalf of themselves and all others similarly situated

("Plaintiffs"), filed a Resistance to the Motion on February 18, 2008 (Clerk's No. 26) and filed

an Amended Resistance to the Motion on March 4, 2008 (Clerk's No. 35).  Defendants filed a

Reply on March 14, 2008.  Clerk's No.  36.   Also before the Court is Plaintiffs' Motion to Strike

Documents and Disregard Related Arguments in Defendants' Motion to Dismiss, filed March

19, 2008.  Clerk's No. 37.  In that Motion, Plaintiffs specifically object to Defendants'

submission of numerous documents in support of the Motion to Dismiss.  *See* Clerk's No. 20,

Exs. 1-7; Clerk's No. 36, Exs. 1-2.  Defendants filed a response to Plaintiff's Motion on April 7,

2008.[1]  Clerk's No. 39.  The matters are fully submitted.

## I.  STANDARD OF REVIEW

In addressing a motion to dismiss under Rule 12(b)(6), this Court must follow the standard of review articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  The Supreme Court determined that the standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief[,]" has "earned its retirement." *Twombly*, 127 S. Ct. at 1968, 1969.  The Supreme Court held that a viable complaint must now include "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 1974.  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level. . . ." *Id.* at 1965.  The new standard is not a "heightened fact pleading" requirement, but "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Id.* at 1965, 1974.

Under *Twombly*, as was the case under *Conley*, the complaint must be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations.  *See id.* at 1964-65; *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997).  Moreover, when

---

[1]  On April 14, 2008, Plaintiffs moved for an extension of time to file a Reply to Defendants' resistance to Plaintiffs' Motion to Strike.  Clerk's No. 40.  Magistrate Judge Celeste Bremer granted the unresisted request for extension of time in a text order on April 15, 2008. Clerk's No. 41.  Local Rule 7(g) provides that, "[o]rdinarily, reply briefs are unnecessary, and the court may elect to rule on a motion without waiting for a reply brief."  Given that the Court is granting Plaintiffs' Motion to Strike for reasons to be discussed *infra*, there is no reason to await a reply brief before issuing a ruling.

considering a motion to dismiss for failure to state a claim, a court must accept the facts alleged

in the complaint as true, even if doubtful.  *See Twombly*, 127 S. Ct. at 1965; *see also Cruz v.

Beto*, 405 U.S. 319, 322 (1972).  Thus, a well-pled complaint may proceed even if it appears

"that recovery is very remote and unlikely."  *Twombly*, 127 S. Ct. at 1965 (quoting *Scheuer v.

Rhodes*, 416 U.S. 232, 236 (1974)), *overruled on other grounds by Davis v. Scherer*, 468 U.S.

183, 191 (1984).

## II.  FACTUAL BACKGROUND

As noted above, because the Court is ruling on a Motion to Dismiss for failure to state a

claim, it must accept the facts alleged in the complaint, or in this case, in Plaintiffs' Amended

Complaint (Clerk's No. 15), as true.  *See Twombly*, 127 S. Ct. at 1965; *see also Cruz*, 405 U.S. at

322.  Here, Plaintiffs' Amended Complaint, filed October 31, 2007, alleges that Defendants

violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et

seq.  Plaintiffs specifically allege that the Defendants "failed to provide complete and accurate

information to participants, deceived and misled them, and failed to act solely in the interests of

the participants and their plans, but instead engaged in blatant and massive self-dealing–all in

violation of ERISA."  Am. Compl. ¶ 19.  Plaintiffs claim that Defendants' failure to fulfill their

fiduciary obligations caused Plaintiffs to lose money when Plaintiffs transferred their retirement

savings into the Defendants' financial products.

The named Plaintiffs in this action are former participants[2] in their respective employers'

---

[2]  At present, neither of the named Plaintiffs are participants in any 401(k) plan
administered or serviced by Defendants.  Nonetheless, Plaintiffs assert that they have standing
under ERISA because, as former plan participants, they have "colorable claims to benefits that
Defendants deprived them of through Defendants' breaches of fiduciary duty, omissions and
misrepresentation, and self-dealing committed while Plaintiffs were still participants in their

401(k) plans,[3] which plans were administered by Principal.  *Id.*  ¶¶ 3, 25.   According to

Plaintiffs, Principal "emphasizes its services of communicating with and educating employee

plan participants."  *Id.* ¶ 27.  "Most importantly for this lawsuit, Principal claims to provide

'benefit[s] counselors' who directly advise terminating employees, particularly about retirement

plan distributions and rollovers."  *Id.*  Plaintiffs claim that despite Principal's assertion that

benefits counselors are "knowledgeable retirement experts [who] are at your service to answer

questions and offer guidance on any aspect of your retirement savings," the benefits counselors

are "instead minimally trained salespersons working in a boiler-room sales operation."  *Id.* ¶ 28,

30.  Furthermore, Plaintiffs claim that Principal never disclosed that benefits counselors do "not

act 'solely in the interest of the plan participants and beneficiaries,'" and that benefits counselors

only offered separating participants a "limited list of high-fee proprietary products," which the

benefits counselors "vigorously push[ed] participants to buy."  *Id.* ¶¶ 30, 32.

 Near or just after the time each Plaintiff retired from their respective employ, each

received a letter from Principal.  Compl. Ex. 1-2.  Each letter bears the letterhead of the Principal

Financial Group, is signed by D.N. Schmitz of the "Retirement Planning Division" and reads:

–Official Notification–
Immediate Action Requested

Dear [Plaintiff]

Your change in employment requires an adjustment to your retirement account
status.

---

employers' plans."  Am. Compl. ¶ 13.

 [3]  Plaintiff Jerri E. Young was a participant in the 401(k) plan of her employer,
Restaurant Concepts, Inc.  *Id.* ¶ 1.  Plaintiff Patricia A. Walsh was a participant in the 401(k)
plan of her employer, C & J Management Corporation.  *Id.* ¶ 2.

> Please call 1-800-247-8000, ext. 2005 to discuss these changes and how they might impact you.
>
> We are available to take your call Monday through Friday, 7 a.m. to 9 p.m. Central Time.  Most issues concerning your account can be resolved in a few minutes time.
>
> We are committed to providing you with accurate, timely information so you can make informed decisions regarding your retirement savings following your change in employment.  Please make this call at your earliest convenience.

*Id*.  Each letter also included its respective Plaintiff's address, place of employment, and identification numbers related to her individual retirement account.[4]  *Id.*  A disclaimer printed at the bottom of each letter states:  "Financial professionals are sales representatives for the members of The Principal Financial Group®.  Except under certain circumstances they do not represent, offer, or compare products and services of other financial services organizations."  *Id.*

Each Plaintiff claims that she was misled by this letter (referred to throughout the Amended Complaint as a "forced call" letter) into believing that she would call Principal and speak to a "true pension administration counselor."  Am. Compl. ¶ 50.  Indeed, Plaintiffs claim that any reasonable plan participant would have believed that the "counselors" they called at the behest of the letter were acting in a fiduciary capacity, in light of the fact that the "forced call" letters "reference their retirement plans and utilized confidential information about their retirement plans that Principal knew only because of its function as plan administrator."  *Id*. ¶ 80.  Instead, unbeknownst to Plaintiffs, the phone number in the letter directed them to Principal Connection sales counselors.  *Id*. ¶ 50.  According to the Amended Complaint, Principal Connection is a call center in Des Moines, Iowa, which was established by Principal in 1998 as

---

[4]  Jerri Young's letter was dated June 1, 2006.  Patricia Walsh's letter was dated February 28, 2006.

the "in-house sales department of Princor." *Id*. ¶ 34.  Princor, in turn, is a wholly-owned

subsidiary of Principal, that is licensed to sell a broad range of securities and other investments.

*Id*. ¶ 33.  The "benefits counselors" at Principal Connection "provided IRA rollover and

investment advice to plan participants for Principal's benefit," selling "exclusively a restricted

list of Principal's proprietary investment and annuity products to participants in retirement plans

that Principal serviced." *Id*. ¶ 35.  The Amended Complaint alleges that Principal Connections

salespersons had as their priority the sale of "Principal J-Shares,"[5] but that sales personnel had a

"sales tree menu" of nine additional Principal products to sell in the event they were unable to

convince a plan participant to purchase the J-Shares.  *Id*. ¶ 37.

When Plaintiffs called the number on the "forced call" letter, the "counselors" convinced

them to roll over their 401(k) assets into a specific Principal J-Shares mutual fund that the

counselor recommended.  *Id*. ¶¶ 103-04.  On or about June 6, 2006, Young purchased 5,684.593

shares of J-Share mutual funds.  *Id*. ¶ 105.  On September 7, 2006, Walsh purchased 3,024.243

---

[5]  The Amended Complaint alleges that "Principal created its J-Shares class of mutual
funds in 2001 for the purpose of offering them to retirement plan participants."  Am. Compl. ¶
40.  Principal Connection sales personnel were required to sell more J-Shares than any other
product. *Id*. ¶ 39.  The Amended Complaint further provides:

> J-Shares are the only mutual funds which Principal Connection sells to retirement
> plan participants who roll over their assets, although Principal has several classes of
> less expensive mutual funds that it sells [to] everyone else.  Of all the Principal
> mutual funds, J-Shares were the most expensive from 2001 through 2006–they had
> the highest internal expenses of any Principal mutual fund class.

*Id*. ¶ 40.  Plaintiffs claim that sales personnel were trained to make J-Shares "sound like no-load
funds, even though they were not," and that sales personnel used "misleading, scripted
investment advice" to make "J-Shares sound less expensive to investors than leaving their
money in their retirement accounts."  *Id*. ¶¶ 42-44.  Indeed, according to Plaintiffs, "J-Shares'
internal expenses far exceed the internal and annual expenses the participants would pay if they
left their retirement money in their retirement plans."  *Id*. ¶ 40.

shares of J-Share mutual funds.  *Id.*  Allegedly, the counselors failed to inform Plaintiffs that

they were not fiduciaries for Plaintiffs' respective 401(k) plans, that sales associates earn

rewards for convincing retirees to roll their retirement accounts into Principal's proprietary

products, that sales personnel are required, as part of their job,[6] to encourage retirees to purchase

"J-Shares," which are the Defendants' product that has the highest internal expenses, or that they

exclusively sell Principal's proprietary products.  Am. Compl. ¶¶ 33, 35, 40.  As a result of this

deception, Plaintiffs claim that they were manipulated into moving their retirement savings into

Principal and Princor's investment product, and ultimately paid more in fees and earned less than

if they had left their money in their employers' retirement accounts.  *Id.* ¶¶ 12, 13.

## III.  LAW AND ANALYSIS

The issues in this case are whether the Court will consider the supplemental documents

submitted by Principal, whether Plaintiffs have alleged sufficient facts to obtain standing under

ERISA §§ 1132(a)(2) and 1132(a)(3), whether Plaintiffs have alleged sufficient facts to support a

claim that Principal owed a fiduciary duty to Plaintiffs and their retirement plan, and whether the

remedies that Plaintiffs request are permissible.  The Court will address each issue in turn.

### A.  *Defendants' Documents in Support of Motion to Dismiss*

Defendants have submitted several documents for the Court's consideration in regard to

the Motion to Dismiss.  Specifically, Defendants have attached seven documents to their brief in

support of the motion, namely:  1) a Flexible Investment Annuity ("FIA") Service and Expense

---

[6]  The Amended Complaint alleges that "[h]igh recognition and prizes are given to agents
who successfully move money out of companies' retirement plan accounts and into Principal's
proprietary products."  *Id.* ¶ 48.  It is further alleged that sales personnel are subject to
performance reviews, and that failure to meet written sales goals will result in negative reports,
or even termination.  *Id.* ¶ 49.

Agreement between Principal Life Insurance Company ("Principal Life") and C & J Management Corporation ("C & J") dated July 1, 2002; 2) an FIA Service and Expense Agreement between Principal Life and C & J dated November 7, 2005; 3) an FIA Service and Expense Agreement between Principal Life and Restaurant Group of Iowa ("Restaurant Group") dated April 27, 2001; 4) a transcript of Walsh's phone call to the Principal Connection on March 22, 2006; 5) a transcript of Walsh's phone call to the Principal Connection on July 26, 2006; 6) a transcript of Young's phone call to the Principal Connection on May 31, 2006; and 7) a May 29, 2007 Prospectus of Principal Investors Fund, Inc. *See* Clerk's No. 20, Exs. 1-7. Additionally, Defendants have attached two additional exhibits to their Reply to Plaintiffs' Resistance to the Motion to Dismiss: 1) a document entitled "Principal Financial Group Prototype for Savings Plans Adoption Agreement Standard"; and 2) a document entitled "Restaurant Group of Iowa, Inc. 401(k) Savings Plan." *See* Clerk's No. 36, Exs. 1-2. On March 19, 2008, Plaintiffs filed a Motion to Strike Documents and Disregard Related Argument in Defendants' Motion to Dismiss. Clerk's No. 37. Therein, Plaintiffs formally object to each and every document Defendants have submitted for the Court's consideration. Plaintiffs urge that none of the documents should be considered in the context of a motion to dismiss, and that many of the documents are unsigned or otherwise unauthenticated. Defendants resist Plaintiffs' Motion to Strike, urging that all of the proffered documents are "necessarily embraced" by Plaintiffs' Amended Complaint. *See* Clerk's No. 39. Attached to Defendants' resistance are affidavits attesting to the authenticity of the exhibits offered in support of the Motion to Dismiss, and a

corrected Exhibit 7[7] offered in support of the Motion to Dismiss.

     Federal Rule of Civil Procedure 12(d) states that the Court cannot consider "matters outside the pleadings" without converting a 12(b)(6) motion into a motion for summary judgment.  Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  The language of the rule is "not permissive," although the Eighth Circuit Court of Appeals has recognized a narrow class of supplemental materials that are not "outside the pleadings" and thus, do not require a court to convert a 12(b)(6) motion into a motion for summary judgment.  *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687-88 (8th Cir. 2003) (finding that the mandate of the rule is "appropriate in light of our prior decisions indicating a 12(b)(6) motion will succeed or fail based upon the allegations contained in the face of the complaint" (quoting *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992))); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (discussing extraneous materials that can be considered on a motion to dismiss).  This narrow class of materials includes "'some materials that are part of the public record or do not contradict the complaint,' as well as materials that are 'necessarily embraced by the pleadings.'" *Porous Media Corp.*, 186 F.3d at 1079 (quoting *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1007 (8th Cir. 1999) and *Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co.*, 967 F.

---

[7]  In their Resistance to Plaintiffs' Motion to Strike, Defendants state Exhibit 7 attached to the Motion to Dismiss, the May 29, 2007 Prospectus of Principal Investors Fund, Inc. was the wrong document.  Accordingly, Defendants attached Exhibit B, a document entitled "Principal Investors Fund, Inc. Class J Shares Prospectus March 1, 2006," to their Resistance and request that the Court substitute Exhibit B for Exhibit 7.

Supp. 1148, 1152 (D. Minn. 1997)).  At issue in the present case is whether the supplemental

material submitted by Defendants are "necessarily embraced" by Plaintiffs' Amended

Complaint.       The Eighth Circuit has stated that the "necessarily embraced" exception does not

disrupt the original intent of Rules 12(b)(6) and 12(d), which is to ensure that a 12(b)(6) motion

will succeed or fail based on the allegations contained on the face of the complaint.  *BJC Health*,

348 F.3d at 687-88.  Indeed, the purpose of the rule is to prevent a plaintiff from "avoid[ing] an

otherwise proper motion to dismiss by failing to attach to the complaint documents upon which it

relies."  *See id.* at 687; *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384

(10th Cir. 1997) (explaining that the purpose of the rule is to prevent plaintiffs from proceeding

with deficient claims simply by refusing to provide the dispositive documents).  The

paradigmatic example of material "necessarily embraced" by a pleading is a written contract in a

case that involves a dispute over the terms of the contract.  *See Books Are Fun, Ltd. v.

Rosebrough*, No. 4:05-cv-00644-JEG, 2006 WL 2583717, at *1 (S.D. Iowa Sept. 6, 2006).  In

such a case, the complaint, by basing its claim solely on the language of the contract has

"embraced" the contents of the contract in its pleadings.  *Id.*

        In this case, Plaintiffs allege that Defendants owed them a fiduciary duty and that

Defendants breached that duty.  While certainly the contract between Principal and Plaintiffs'

employers serves to define some of the contours of that relationship and the respective duties of

the contracting parties, the fact remains that a contractual relationship is not the only means of

creating a fiduciary relationship; such a relationship may also be created through conduct.  29

U.S.C. § 1002(21); 29 C.F.R. § 2510.3-21; *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 251 (1993).

Hence, Defendants cannot demonstrate to the Court that they lacked a fiduciary duty to Plaintiffs

by presenting contractual documents, when the Amended Complaint alleges that the fiduciary

duty arose, at least in part, by Defendants' actions.  Likewise, a fiduciary duty can be breached

in more than one way.  While the proffered transcripts may serve to undermine some of the

assertions in Plaintiffs' Amended Complaint, the alleged breach of fiduciary duty in this case is

much broader than Plaintiffs' phone calls to Principal Connection alone, encompassing other

actions by Defendants, such as using confidential information in the "forced call" letters.

Regardless, the question at this early stage of the proceedings is whether Plaintiffs have

sufficiently *alleged* the existence of a fiduciary relationship, not whether a fiduciary relationship

*in fact* existed.  Indeed, the question of whether a fiduciary relationship did exist is inherently a

factual one, inappropriate for resolution on a motion to dismiss.  Accordingly, the Court declines

to consider Defendants' attached documents.

## B.  *Do Plaintiffs Have Standing to Assert their ERISA Claim?*

ERISA's enforcement provision provides, in pertinent part, that a civil action may be

brought:

    (1)      by a participant or beneficiary–

           (A)      for the relief provided for in subsection (c) of this section, or

           (B)      to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

    (2)      by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109[8] of this title;

    (3)      by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or

---

[8]  29 U.S.C. § 1109 provides for "Liability for breach of fiduciary duty."

(B) to obtain other appropriate equitable relief (i) to redress such violations
or (ii) to enforce any provisions of this subchapter or the terms of the plan

29 U.S.C. § 1132(a).  In this case, Plaintiffs only claim statutory standing on two grounds, as

provided by §§ 1132(a)(2) and 1132(a)(3).  Just as each of these sections provide different

grounds for standing, so too do they require the pleadings of different elements in order to obtain

standing.  *See* 29 U.S.C. §§ 1132(a)(2), 1132(a)(3).  Therefore, the Court will address Plaintiffs'

standing under each subsection in turn.

      1.     *Standing under 29 U.S.C. § 1132(a)(2).*

Defendants claim that ERISA § 1132(a)(2) only permits current plan participants to

obtain remedies for ERISA violations, and only for harms that accrue to the plan itself.

Accordingly, Defendants argue that since Plaintiffs are *former* plan participants suing for harms

to their *individual* retirement accounts, they do not have standing under § 1132(a)(2).

      a.     *Have Plaintiffs alleged they are "participants" for purposes of standing*
                   *under § 1132(a)(2)?*

Section 1132(a)(2) limits standing to suits brought by "the Secretary, or by a participant,

beneficiary or fiduciary for appropriate relief under section 1109 of this title."  As noted, § 1109

permits the imposition of liability on "any person who is a fiduciary with respect to a plan who

breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this

subchapter. . . ."  The term "participant," as used in § 1132(a)(2), is defined in § 1002(7) as "any

employee or former employee of an employer, or any former member of an employee

organization, who is or may become eligible to receive a benefit of any type from an employee

benefit plan. . . ."  29 U.S.C. § 1002(7).  The Supreme Court has interpreted this provision as

follows:

> In our view, the term "participant" is naturally read to mean either employees in, or reasonably expected to be in, currently covered employment, or former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits.  In order to establish that he may become eligible for benefits, a claimant must have a colorable claim that (1) he will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989) (citations and internal quotations omitted).  It is clear that Plaintiffs here do not contend that they have "a reasonable expectation of returning to covered employment."  Rather, it appears that Plaintiffs are arguing that they have a "colorable claim for vested benefits," which claim arises out of an exception to the *Bruch* rule.

The Eighth Circuit, in *Adamson v. Armco, Inc.*, 44 F.3d 650, 654 (8th Cir. 1995), stated as a general matter that, with regard to the *Bruch* test, the fact that a plaintiff was "a plan participant in the past is irrelevant.  'The statute by its terms does *not* permit a civil action by someone who *was* a participant at the time of the alleged ERISA violation.  Rather, it is written in the present tense, indicating that current participant status is the relevant test.'"  *Adamson*, 44 F.3d at 654 (quoting *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1534-35 (10th Cir. 1993)).  The Eighth Circuit went on to recognize, however, that an exception to the *Bruch* requirement exists in cases where, "'but for the employer's conduct alleged to be in violation of ERISA,' the employee or former employee would be a plan participant."  *Id*. at 654 (noting that while some circuits have declined to adopt the exception, the Eighth Circuit "apparently adopted it without discussing the issue in *Howe v. Varity Corp.*, 36 F.3d 746 (8th Cir. 1994) (quoting *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1221 (5th Cir. 1992)))*.

In turn, the *Adamson* exception only applies "when the fiduciary's breach of duty has deprived the [§ 1132(a)(2) or § 1132(a)(3)] plaintiff of participant status.  It does not apply to

-13-

claimants whose loss of participant status resulted from their own actions." *Id*. at 655. Defendants argue that this second sentence "perfectly describes" Plaintiffs here. Defs.' Reply at 3. That is, Defendants assert that "the Amended Complaint and the documents 'necessarily embraced by' it . . . show that Plaintiffs chose to remove their retirement funds from their employers' 401(k) plans. No one forced them to do so." *Id*. Defendants argument is unavailing. The allegations in Plaintiffs' Amended Complaint generally are that, but for Defendants' deceptions, misrepresentations, and omissions, done in violation of Defendants' fiduciary duties under ERISA, Plaintiffs would not have moved their funds out of their 401(k) plans and would, therefore, still be plan participants. This allegation fits precisely within the exception recognized in *Adamson*. As the Court noted previously, to consider the supplemental documentation provided by Defendants would necessitate converting the present motion into one for summary judgment, since the questions of whether Defendants owed a fiduciary duty to Plaintiffs and if so, whether Defendants breached that duty, is inherently a factual one. Accordingly, the Court concludes that Plaintiffs' allegations fall squarely within the *Adamson* exception, i.e., Plaintiffs in this case qualify as "participants" under section 1132(a)(2), based on the allegation that they were deceived by Defendants into leaving their retirement accounts.

b.   *Have Plaintiffs alleged a harm sufficient to support standing under §*
*1132(a)(2)?*

Having established that Plaintiffs are participants within the meaning of § 1132(a)(2), the Court still must determine whether Plaintiffs have alleged a harm sufficient to support standing under that subsection. Section 1132(a)(2) only permits a participant to maintain an action for relief under § 1109. Section 1109, in turn, provides that a fiduciary who breaches his duty shall be liable "to make good *to such plan* any losses *to the plan*." 29 U.S.C. § 1109(a) (emphasis

added).  Defendants argue that Plaintiffs cannot maintain standing under § 1132(a)(2) because they are not alleging any harm to the plan itself, but rather are claiming losses to their individual accounts within their respective employers' plans.  The Supreme Court has recently ruled that a plan participant may bring suit under section 1132(a)(2) to redress harms to an individual retirement account.  *LaRue v. DeWolff, Boberg & Assoc., Inc.*, 128 S. Ct. 1020 (2008).[9]  This interpretation is a departure from earlier precedent, which only allowed suit under § 1132(a)(2) for injury to the plan itself.  *See Russell v. Mass. Mut. Life Ins. Co.*, 473 U.S. 134, 140 (1985). Citing a changed landscape in employee retirement benefits, the *LaRue* court found that earlier precedent was limited to cases involving defined benefit plans and did not control in cases involving defined contribution plans, such as the plan in *LaRue*.  *LaRue*, 128 S. Ct. at 1025.

While *LaRue* expanded section 1132(a)(2) to include remedies for harms to individual accounts, the Supreme Court held that these remedies were available only for "fiduciary breaches that impair the value of plan assets in a participant's individual account" and not "for individual injuries distinct from plan injuries."  *Id.* at 1026.  In *LaRue*, a participant had asked the plan administrator to change the investments in his plan account.  *Id.* at 1022-23.  The administrator failed to make the changes and subsequently, the participant's account was worth less than it would have been had the administrator made the requested changes.  *Id.*  At the time the case was decided, the plaintiff was no longer a plan participant.  *Id.*  The Court nonetheless

---

[9]  Defendants appear to acknowledge that *LaRue* forecloses any argument that § 1132(a)(2) cannot apply to individual retirement accounts.  *See* Defs.' Reply at 2 ("*LaRue* affects only one strand of one of The Principal's arguments, namely the contention that–as Plaintiffs conceded in their Amended Complaint–ERISA section [1132(a)(2)] applies only to claims that are pursued on behalf of a retirement plan as a whole, not claims pursued on behalf of individual participants.").

found that the plaintiff had standing under 1132(a)(2) because the harm had occurred while the funds were still held in an employee benefits account.  Therefore, the plaintiff had a colorable claim to benefits.  *Id.* at 1026 n.6.

Whether the precedent in *LaRue* extends to provide former participants a remedy for losses that occurred, as is alleged here, *after* a participant terminated her individual retirement account is a matter of first impression.  In this case, Plaintiffs claim that, "but for" Defendants' deception and correspondent breach of fiduciary duty, Plaintiffs would not have removed their money from their employers' retirement plans and, consequently, their 401(k) accounts would presently be worth more than their investments in Principal's alternative products.  Therefore, the harm that Plaintiffs allege in this case is one step removed from the  harm in *LaRue*, i.e., Plaintiffs are not alleging a specific harm to an ERISA account, but rather are alleging harm to private investment accounts separate from the original ERISA plan.

The Court in *LaRue* carefully noted that it was not providing a remedy "for individual injuries distinct from plan injuries."  *Id.* at 1026.  Indeed, Congress created ERISA to protect employee benefit plans, not to protect all assets that were at some point part of an ERISA plan. *See*, *e.g.*, *Harzewski v. Guidant Corp.*, 489 F.3d 799, 804-05 (7th Cir. 2007) (pointing out that § 1132(a)(2) is only concerned with protecting ERISA plans and ERISA individual retirement accounts, and with ensuring that plan accounts pay the correct amount at the time of termination).  In the present case, Plaintiffs do not allege that Defendants' breach or deception directly caused harm to either an employee benefit plan or to an individual ERISA benefit account *while* the assets were invested in an ERISA plan, nor do Plaintiffs claim that Defendants' breach reduced the amount of money Plaintiffs received when they cashed out of

their employers retirement plan.  Instead, Plaintiffs only allege that after they removed their

money from their employers' ERISA plans, their investments have performed poorly and that the

fees that Principal has charged caused their current investments to be substantially less valuable

than they would have been had Plaintiffs remained in their ERISA plans.  To find that Plaintiffs

have standing under § 1132(a)(2) on this factual scenario would require the Court to expand

ERISA protection to include "former" plan assets.  The Court does not believe that ERISA or

*LaRue* supports such an extension.  The Court recognizes the potential unfairness that may result

from its refusal to extend *LaRue*.  Assuming Plaintiffs' allegations are true, denying them

standing under § 1132(a)(2) will essentially reward Defendants for their misdeeds.  To grant

standing, however, would unduly and inappropriately expand ERISA, potentially opening the

door to lawsuits against anyone who offered investment advice for, or exercised authority over,

assets  that had once been part of an ERISA plan.  This is not the intent of the law, and the Court

cannot rewrite the statute to provide a remedy where none exists.  *See Russell*, 473 U.S. at 147.

Accordingly, the Court concludes that Plaintiffs lack standing under § 1132(a)(2).

       2.      *Standing under 29 U.S.C. § 1132(a)(3).*

       The Court's determination that Plaintiffs lack standing under § 1132(a)(2) does not defeat

their claim if Plaintiffs can establish standing under another provision of ERISA.  Plaintiffs

alternatively allege standing under § 1132(a)(3), which provides:

> A civil action may be brought [] by a participant, beneficiary, or fiduciary (A) to
> enjoin any act or practice which violates any provision of this subchapter or the
> terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such
> violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).  Similar to § 1132(a)(2), the courts have expanded this section to

provide a remedy to *individual* account holders and, additionally, to individual *former*

participants.

The Supreme Court in *Varity Corp. v. Howe* characterized § 1132(a)(3) as a "catchall" provision.  516 U.S. 489, 512 (1996).  The Court explained:

> ERISA § [1132](a)(3) authorizes lawsuits for individualized equitable relief for breach of fiduciary obligations.  This Court's decision in *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, that § [1132](a)(2)—which permits actions "for appropriate relief under [§ 1109]"—does not provide individual relief does not mean that such relief is not "appropriate" under subsection (3).  The language that the Court found limiting in *Russell* appears in § [1109], which authorizes relief only for the plan itself, and § [1109] is not cross-referenced by subsection (3).  Further, another remedial provision (subsection (1)) provided a remedy for the *Russell* plaintiff's injury, whereas here respondents would have no remedy at all were they unable to proceed under subsection (3).  Granting individual relief is also consistent with ERISA's language, structure, and purpose.  Subsection (3)'s language is broad enough to cover individual relief for breach of a fiduciary obligation, and other statutory language supports this conclusion.  Nothing in ERISA's structure indicates that Congress intended § [1109] to contain the exclusive set of remedies for every kind of fiduciary breach.  In fact, § [1132]'s structure suggests that Congress intended the general "catchall" provisions of subsections (3) and (5) to act as a safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy.

*Id.* at 490.  The Court in *Varity* found that the catchall remedy provided in 1132(a)(3) provided a remedy for plan participants to sue for injury to their own individual account, in addition to allowing participants to sue for injuries to the plan as a whole.  *Id.* at 510.  Likewise, courts have recognized that, as under § 1132(a)(2), "former participants" may have standing under § 1132(a)(3), if they were deceived into leaving the ERISA plan.  *See Adamson*, 44 F.3d at 654-55.

Consequently, in order to have standing under § 1132(a)(3), Plaintiffs in this case must only allege enough facts to state a claim to relief that is plausible on its face that first, Defendants breached a fiduciary duty or violated a term of the plan or a provision of ERISA, and second, that Defendants' breach of that fiduciary duty caused them to leave the plan.  *See* 29 U.S.C. § 1132(a)(3);  *Varity Corp.*, 516 U.S. at 512; *Adamson*, 44 F.3d at 655.  Plaintiffs do not

have to claim a tangible injury to an ERISA plan or account to have standing under 1132(a)(3),

as they do under 1132(a)(2).  *Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir. 1997).

In this case, Plaintiffs claim standing based on assertions that Defendants owed them a

fiduciary duty, breached that fiduciary duty, and that the breach caused Plaintiffs to leave the

plan.  Plaintiffs support these allegations by making assertions which will be detailed in the next

section in this order.  In summary, however, Plaintiffs have alleged factual bases sufficient to

support standing under § 1132(a)(3).

C.  *Have Plaintiffs Alleged Sufficient Facts to Support the Assertion that Defendants were Fiduciaries?*

ERISA contains several provisions which define precisely who is liable as a fiduciary to

an employee benefit plan.  ERISA states:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting management of such plan
> or exercises any authority or control respecting management or disposition of its
> assets, (ii) he renders investment advice for a fee or other compensation, direct or
> indirect, with respect to any moneys or other property of such plan, or has any
> authority or responsibility to do so, or (iii) he has any discretionary authority or
> discretionary responsibility in the administration of such plan.  Such term includes
> any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).[10]  The Eighth Circuit has stated that courts should construe the term

"fiduciary" broadly under ERISA, and in favor of finding that a fiduciary duty exists.  *Olson v.

E.F. Hutton & Co., Inc.*, 957 F.2d 622, 625 (8th Cir. 1992) (citing *Consol. Beef Indus. v. New

York Life Ins. Co.*, 949 F.2d 960, 964 (8th Cir. 1991)).  Consequently, courts will find that a

---

[10]  ERISA also states that an investment manager is a fiduciary if that person has the
power to "manage, acquire, or dispose" of any plan assets, and if that person has "acknowledged
in writing that he is a fiduciary with respect to the plan."  29 U.S.C. § 1002(38).

party is a fiduciary if it performs fiduciary-like duties, regardless of whether that party has been explicitly named a fiduciary in the plan agreement. *Id.* The Eighth Circuit explained that favoring a finding that a fiduciary duty exists is consistent with "Congress' desire that ERISA protect 'the interests of participants in employee benefit plans and their beneficiaries, because it imposes fiduciary status upon those who act like fiduciaries as well as those who are named as fiduciaries.'" *Id.* (internal citations omitted). In addition, ERISA creates a fiduciary duty for advisors who provide advice that is the "primary basis" for investment decisions. 29 U.S.C. § 1002(21); *Olson*, 957 F.2d at 626. Furthermore, the determination of whether a party is providing the "primary basis for the Plan's investment decisions," is "an issue for the trier of fact." *Olson*, 957 F.2d at 626.

In this case, Plaintiffs make several allegations in the Amended Complaint which, assuming they are true, could demonstrate that Defendants owed a fiduciary duty, that Defendants breached that fiduciary duty,[11] and that Defendants' breach caused Plaintiffs to leave their ERISA plan, thereby causing harm. In support of their contention that Defendants were fiduciaries of Plaintiffs' respective ERISA plans, Plaintiffs allege in the Amended Complaint that Principal exercises discretionary authority or control respecting management of the plans by providing "complete plan management services in its 'full service' plan packages it sells employers"; by providing plan administration services; by rendering investment advice for a fee or other compensation to participants and plans; by agreeing with plan sponsors that "Principal, not the employers, would be responsible for providing investment advice to plan participants,

---

[11] With regard to whether a fiduciary duty has been breached, ERISA provides that fiduciaries have a duty to act "solely in the interest of the participants and beneficiaries" of the plan. 29 U.S.C. § 1104.

especially regarding the highly important post-employment investment decision for plan assets";
by using confidential information and a position of trust with participants to give participants
investment advice; by dominating participants' decision-making and serving as a primary source
of investment information; by channeling participant phone calls made in response to "forced
call" letters to a sales department to render investment advice; by rendering investment advice to
participants by pre-selecting the mutual funds it considered appropriate investments for the plans
and the plan participants; and by maintaining unilateral control over which mutual funds would
remain available to plans, amongst other things.  Am. Compl. ¶¶ 72-85.  Plaintiffs further allege
that Defendants breached their fiduciary duties by inappropriately supplying private information
about individual participants to its sales department; by deceiving and misleading plan
participants about the nature of the advice being given; by withholding from individual plan
participants information about sales associates receiving bonuses; by withholding information
regarding the fees associated with the products participants were encouraged to invest in; and by
not acting solely for the benefit of the plan or the plan participants.

Defendants offer several arguments that the functions Plaintiffs allege were performed
were either not performed, or constitute an insufficient basis on which a fiduciary relationship
could be founded.  As noted before, however, the question at this early stage of the litigation is
not whether Defendants will ultimately be found to have been fiduciaries, but whether Plaintiffs
have alleged sufficient facts in the Amended Complaint, which taken as true, create a plausible
claim to relief.  Indeed, "[f]iduciary status is a fact sensitive inquiry and courts generally do not
dismiss claims at this early [motion to dismiss] stage where the complaint sufficiently pleads
defendants' ERISA fiduciary status."  *In re Schering-Plough Corp.*, No. Civ. A. 03-1204, 2007

WL 2374989, at *7 (D.N.J. Aug. 15, 2007).  While the documents that Defendants have

proffered in support of their argument that they are not fiduciaries may ultimately establish such

as fact, those documents do not present a complete picture, as Plaintiffs may well come forth

with testimony and other documentary evidence which would prove their allegations of a

fiduciary relationship and counter the documentary evidence submitted by Defendants.  In

reality, Defendants would have the Court determine, on a contested and incomplete record, that

the allegations in Plaintiffs' Amended Complaint are without merit.  This the Court declines to

do.  Accordingly, the Court finds that Plaintiffs have alleged sufficient facts to maintain, at least

at this early stage of the proceedings, an ERISA claim under § 1132(a)(3).

### D.  *Remedy*

As discussed *supra*, Plaintiffs only standing for asserting the present action arises under §

1132(a)(3).  Accordingly, Plaintiffs may only request remedies available under that subsection.

By its terms, § 1132(a)(3) authorizes "appropriate equitable relief."  This has been defined as

meaning that § 1132(a)(3) remedies are "limited to classic equitable remedies such as injunctive,

restitutionary, or mandamus relief, and [do] not extend to compensatory damages."  *Kerr v.

Charles F. Vatterott & Co.*, 184 F.3d 938, 943 (8th Cir. 1999); *see also Great-West Life &

Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10 (2002) (noting a prior holding that "equitable

relief must mean *something* less than *all* relief, and rejecting the inclusion of remedies not

traditionally available in equity (citations and internal quotations omitted)).

The Eighth Circuit in *Kerr* distinguished between a restitutionary award, which is

permissible as an equitable remedy under § 1132(a)(3), and a compensatory award, which is not

permissible:

> The basic distinction between equitable restitution and compensation focuses on the genesis of the award sought by the plaintiff.  A restitutionary award focuses on the defendant's wrongfully obtained gain while a compensatory award focuses on the plaintiff's loss at the defendant's hands.  Restitution seeks to punish the wrongdoer by taking his ill-gotten gains, thus, removing his incentive to perform the wrongful act again.  Compensatory damages on the other hand focus on the plaintiff's losses and seek to recover in money the value of the harm done to him.

*Kerr*, 184 F.3d at 944.  The court also explained that in *Howe*, it had previously granted a restitutionary award to plaintiffs who were fraudulently removed from their retirement plan into another plan without their knowledge.  *Id.*  In that prior case, the court returned "the plaintiffs to the position they would have occupied [as participants in the plan] if the misrepresentations . . . had never occurred," by reinstating them as participants of the plan.  *Id.* (citing *Howe*, 36 F.3d at 756 (internal quotations omitted)).  The award did not, however, "provide retrospective relief for the period in which the employees were not covered under the plan."  *Id.*  Likewise, in *Kerr*, as in the present case, the plaintiff was seeking monetary damages for the difference between what he "could have earned and what he in fact earned," i.e., "lost opportunity costs."  *Id.* at 945.  *Kerr* rejected such an award, concluding that the claim was one for compensatory damages, and not for restitution.  *Id.*  The court focused on the fact that the defendant in the case had a "zero gain" as a result of its alleged wrongdoing, meaning that there was nothing to disgorge, and thus, no damage subject to restitution.  *Id.*

In the present case, Plaintiffs request a remedy that would return them to the position they would have been in, had Principal not breached its fiduciary duty.  Plaintiffs also request a disgorgement of the profits that Principal earned from its breach.  Under the precedent in *Kerr*, Plaintiffs are not entitled to compensation for the lost opportunity, or lost-profits, caused by moving their retirement savings into Principal's products under section 1132(a)(3), regardless of

whether Principal deceived them into leaving the plan.  However, depending on the development

of the facts of the case, Plaintiffs may be entitled to the traditional equitable remedy of a

disgorgement of Principal's profits and they may be entitled to transfer their savings back into

their employers retirement plan or some other form of traditional equitable relief.  The Court

finds that Plaintiffs have stated sufficient grounds to show that they may become entitled to these

remedies.

### IV.  CONCLUSION

For the reasons stated herein, Plaintiffs' Motion to Strike (Clerk's No. 37) is GRANTED.

Defendants' Motion to Dismiss (Clerk's No. 19) is GRANTED IN PART and DENIED IN

PART.  Specifically, to the extent Defendants request that the Court strike any claim for

compensatory damages by Plaintiffs, the motion is granted.  It is denied in all other respects.

IT IS SO ORDERED.

Dated this ___21st___ day of April, 2008.

_____
ROBERT W. PRATT, Chief Judge
U.S. DISTRICT COURT