**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| PATRICIA A. WALSH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 4:07-CV-00386-RP-CFB |
| | ) |
| PRINCIPAL LIFE INSURANCE COMPANY | ) Hon. Robert W. Pratt |
| and PRINCOR FINANCIAL SERVICES | ) |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants Principal Life Insurance Company ("Principal Life") and Princor Financial Services Corporation (collectively, "Defendants") submit this memorandum in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56.

**Introduction**

Plaintiff Patricia A. Walsh filed this lawsuit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* In particular, Mrs. Walsh claims that Defendants breached their fiduciary duties by persuading her to move her savings from her former employer's 401(k) plan to a Principal Life individual retirement account, or "IRA."

As explained below, Defendants are entitled to summary judgment for two independent reasons. First, Mrs. Walsh cannot show that Defendants acted as fiduciaries when they took the actions complained of. Fiduciary status applies only "to the extent" a defendant takes certain actions or has certain powers, 29 U.S.C. § 1002(21)(A), and Defendants did none of those things: They did not exercise control or authority over plan management or plan assets; they did not provide investment advice for a fee; and they did not have discretionary authority or

discretionary responsibility with respect to plan administration. Because Defendants did not serve as fiduciaries within the meaning of ERISA, they cannot be held liable for a breach of fiduciary duty under ERISA.

Second, even if there were a material issue of fact concerning fiduciary status, Defendants are still entitled to summary judgment because they did not breach any conceivable duty. Mrs. Walsh alleges that Defendants failed to disclose that the mutual funds she purchased carried higher expenses than other available funds (*e.g.*, Dkt. 80, Am. Compl. ¶¶ 41-42), but there is no dispute that she received a prospectus (*id.* ¶ 100) that disclosed the relevant expenses. Accordingly, even if Defendants could be considered fiduciaries under ERISA, they are entitled to summary judgment.

## Factual Background

Before she retired, Mrs. Walsh was a participant in her employer's 401(k) plan. *See* Defs.' Stmt. of Undisputed Material Facts ("Stmt.") ¶ 1. Her employer's plan entered into a Service and Expense Agreement with Principal Life, pursuant to which Principal Life provided ministerial services such as recordkeeping and asset holding services. *Id.* ¶ 2. The agreement specifically disclaimed any fiduciary responsibilities: "Nothing in this Agreement, nor in the provision of Services makes us a party to, or a fiduciary or administrator regarding, the Plan or any Plan entity." *Id.* ¶ 3.

While working for her employer, Mrs. Walsh made her own decisions about how to invest her 401(k) savings. *Id.* ¶ 4. When she retired, she received a letter from Principal Life asking her to call to discuss her 401(k) account. *Id.* ¶ 5. The letter indicated that it was intended to promote the sale of Principal financial products:

> Financial professionals are sales representatives for the members of The Principal Financial Group®. Except under certain circumstances they do not

represent, offer, or compare products and services of other financial services organizations.

*Id.*

On March 22, 2006, Mrs. Walsh called Principal Life to discuss what to do with her 401(k) money. *Id.* ¶ 6. The sales representative who answered the phone told Mrs. Walsh that she could leave her money in her former employer's 401(k) plan. *Id.* Specifically, Mrs. Walsh was told that "the first option you always have is that you can continue to leave funds as is under [your former employer's] plan as long as you need to." *Id.* ¶ 7. The sales representative continued, "we just want to make sure you know what options you do have available. Whether that is 'no, I don't want to do anything, I want to leave it as is,' well, that's great." *Id.* ¶ 8. The representative offered Mrs. Walsh the option of putting her money into an IRA and said, "If we can help you with that, let us know. Or, you can do that about anywhere." *Id.* ¶ 9. After Mrs. Walsh indicated that her accountant was on vacation, the representative suggested, "Just keep in touch after you talk to your . . . accountant." *Id.* ¶ 10.

By the end of the call, Mrs. Walsh was planning to transfer her savings to an IRA with another company, Schwab. *Id.* ¶ 11. Mrs. Walsh understood that she could, if she wished, move her money to Schwab or any other non-Principal IRA. *Id.* ¶ 12. Later, Mrs. Walsh decided not to speak to her accountant or attorney, but she did speak to Schwab. *Id.* ¶ 13. She called Principal Life a second time a few months later, on July 26, 2006. *Id.* ¶ 14. At the beginning of the second call, plaintiff's first words to the representative, Josh Saboe, indicated that she had already decided to roll over her money to a Schwab IRA: "Yes, Josh. I have a 401(k) plan there and I have retired, and . . . I want to . . . have that transferred over to Schwab, which is where I have the best investments." *Id.* ¶ 15. By the end of the call, however, Mrs. Walsh had decided to roll over into a Principal IRA. *Id.* ¶ 16. Mrs. Walsh testified that this decision was hers:

> Q. Now, by the end of your conversation with Mr. Saboe, you had decided to put your money into a Principal IRA?
>
> A. That's right.
>
> Q. And that was a decision that ultimately you made, correct?
>
> A. That's correct.

*Id.*

Plaintiff acknowledges that before she made the second call, she did not receive any investment advice from Defendants or enter any agreement that they would provide any such advice. *Id.* ¶ 17.

Mrs. Walsh subsequently received a prospectus for the Principal Life IRA. *Id.* ¶ 18. The prospectus contains information about the investments, including the expenses associated with them. *See id.*

While Mrs. Walsh testified in her deposition that she thinks her purchase of a Principal IRA was a "bad investment," she has kept her money in that IRA – even during this lawsuit – because "I haven't found anything else that I look at that's a better investment." Walsh Dep. at 80-81 (Exhibit 2 to Stmt.).

## Argument

**I.     Summary Judgment Standard**

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the burden of proof at trial would fall on the non-moving party, the movant is not required to prove a negative, but instead may point to a lack of evidence supporting an essential element of the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The burden then shifts to the non-

moving party to present admissible evidence that raises a genuine issue of fact. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Rather, there must be enough evidence that a jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In other words, "[a] party resisting a properly supported summary judgment motion may not rest upon the mere allegations or denials of the pleadings, but by affidavit or otherwise as provided by Rule 56 must set forth specific facts showing the existence of a genuine issue for trial." *Allen v. Entergy Corp.,* 181 F.3d 902, 904 (8th Cir. 1999).

## II. Defendants Are Not ERISA Fiduciaries

Absent a fiduciary relationship between Mrs. Walsh and Defendants, Plaintiff's claims must be dismissed. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993); *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277-80 (11th Cir. 2005). A fiduciary relationship does not arise merely because a plaintiff has purchased a financial product that may somehow be connected with a retirement plan. As the Eighth Circuit has explained, "'Simply urging the purchase of its products does not make an insurance company an ERISA fiduciary with respect to those products.'" *Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214, 217 (8th Cir. 1993) (quoting *Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y*, 841 F.2d 658, 664 (5th Cir. 1988)).

ERISA defines "fiduciary" as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or

5

>control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  "[T]he power to act for the plan is essential to status as a fiduciary under ERISA." *Assocs. in Adolescent Psychiatry v. Home Life Ins. Co.*, 941 F.2d 561, 570 (7th Cir. 1991); *Martin v. Feilen*, 965 F.2d 660, 668-69 (8th Cir. 1992).

### A. Defendants Neither Had Nor Exercised Control Over Plaintiff's Plan or Plan Assets as Required by 29 U.S.C. § 1002(21)(A)(i) and (iii)

The key to becoming a fiduciary under §§ 1002(A)(i) and (iii) is discretion over (or the exercise of control over) plan management or plan assets.  "Subsection one imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted.  Subsection three describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised." *Olson v. E.F. Hutton & Co.*, 957 F.2d 622, 625 (8th Cir. 1992).

Plaintiff cannot show that Defendants were granted discretionary authority over the management of the 401(k) plan of Plaintiff's former employer.  The relationship between plaintiff's former employer and Principal Life was set forth in a written agreement, and no section of the agreement grants Principal Life control over plan assets.  Indeed, that agreement indicates that Principal Life provided non-discretionary services and stated that Principal Life was not a fiduciary.  *See* Stmt. ¶¶ 2-3; *see also Reich v. Lancaster*, 55 F.3d 1034, 1046-47 (5th Cir. 1995); *Molasky v. Principal Mut. Life Ins. Co.*, 149 F.3d 881, 884 (8th Cir. 1998).

Nor did Defendants exercise authority or control over the 401(k) plan or plaintiff's assets in the plan.  As this Court has observed, "an entity must have some discretion or control over the plan assets at issue in order to qualify as a fiduciary under the second clause of §

1002(21)(A)(i)." Dkt. 112, Order at 31. It is not enough to argue that Principal Life might have persuaded Mrs. Walsh to roll over her assets; Plaintiff must show that Principal Life had "actual control over the assets at issue." *Id.* at 32 (citing *FirsTier Bank, N.A. v. Zeller,* 16 F.3d 907, 911 (8th Cir. 1994)). Here, Mrs. Walsh – not Defendants – retained "actual control" over her plan assets. Mrs. Walsh testified that she was the one who "decided to put [her] money into a Principal IRA." Walsh Dep. at 57:2-8 (Exhibit 2 to Stmt.). Accordingly, Mrs. Walsh – not Defendants – exercised control. *Cf. Olson,* 957 F.2d at 624 (finding exercise of control where broker sold investments without permission from trustees).

### B. Defendants Did Not Provide Investment Advice for a Fee Under 29 U.S.C. § 1002(21)(A)(ii)

Plaintiff also alleges that Principal Life became a fiduciary under 29 U.S.C. § 1002(21)(A)(ii) by "render[ing] investment advice." Dkt. 80, Am. Compl. ¶ 71. According to the complaint, "Principal agreed with the plan sponsors that Principal, not the employers, would be responsible for providing investment advice to plan participants, especially regarding the highly important post-employment investment decisions for plan assets." *Id.* But there is no evidence to support this allegation and, more specifically, no evidence that Defendants reached any such agreement with Mrs. Walsh's former employer. *See Celotex,* 477 U.S. at 322-23.

Nor can Plaintiff show that Defendants gave her "investment advice," as that term of art is used in ERISA. The Department of Labor has issued regulations interpreting this provision of ERISA. 29 C.F.R. § 2510.3-21(c). To show that a defendant is a fiduciary, a plaintiff must go beyond showing that "investment advice," in the lay sense of the term, was given, and allege at least one of two additional elements. One element requires a plaintiff to demonstrate that the defendant had "discretionary authority or control" over the purchase and sale of plan assets. *Id.* § 2510.3-21(c)(ii)(A). This may happen, for example, when a broker trades a client's

7

investments without permission from the client. *See Olson*, 957 F.2d at 627. Nothing like that happened here.

A plaintiff can also establish fiduciary status by showing that (1) the defendant made investment recommendations to the retirement plan on a regular basis, (2) the investment advice was given pursuant to an agreement with the plan that the defendant would give such advice, (3) the advice served as the primary basis for investment decisions with respect to plan assets, and (4) the investment advice was individualized to the needs of the plan. 29 C.F.R. § 2510.3-21(c)(ii)(B). The Eighth Circuit has held this section should be analyzed "by first determining 'whether under the regulation there existed a mutual agreement or understanding between the parties that [the alleged fiduciary's] advice would be the primary basis for the Plan's investment decisions.'" *Olson*, 957 F.2d at 626 (quoting *Farm King Supply, Inc. v. Edward D. Jones & Co.*, 884 F.2d 288, 293 (7th Cir. 1989)). Again, plaintiff cannot prove that anything like that happened with respect to her former employer's plan.

This conclusion is also consistent with the Department of Labor's regulation on the question of "investment advice" to individual plan participants, 29 C.F.R. § 2509.96-1:

> [A] person will be considered to be rendering "investment advice," within the meaning of ERISA section 3(21)(A)(ii), to a participant or beneficiary only if:
>
> (i) the person renders advice to the participant or beneficiary as to the value of securities or other property, or makes recommendations as to the advisability of investing in, purchasing, or selling securities or other property . . . ; and
>
> (ii) the person, either directly or indirectly, (A) has discretionary authority or control with respect to purchasing or selling securities or other property for the participant or beneficiary . . . , or (B) renders the advice on a regular basis to the participant or beneficiary, pursuant to a mutual agreement, arrangement or understanding (written or otherwise) with the participant or beneficiary that the advice will serve as a primary basis for the participant's or beneficiary's investment decisions with respect to plan assets and that such person

will render individualized advice based on the particular needs of the participant or beneficiary.

Here, Plaintiff cannot show that Defendants had any discretionary authority or control with respect to Plaintiff's investment decisions. *See supra* at 6-7.  Nor can she show that Defendants rendered any investment advice on a "regular" basis – the only potential "advice" involved a single phone call.  *See* Stmt. ¶¶ 14-16.  And there was no "mutual agreement" that any advice would be a "primary basis" for Plaintiff's investment decisions.  *Id.*  Finally, Plaintiff cannot show that the advice she received was "individualized," as is required to meet the "investment advice" prong of ERISA's definition of fiduciary.  To the contrary, Plaintiff has alleged that although she expected that Principal Life would give her advice that was individualized, "in fact it was not."  Dkt. 80, Am. Compl. ¶ 73.  *See also Blevins Screw Prods., Inc. v. Prudential Bache Sec., Inc.*, 835 F. Supp. 984, 987 (E.D. Mich. 1993) (dismissing ERISA claim because defendant's alleged advice was not "individualized …[to] the particular needs of the Plans").  As was the case in *Consolidated Beef Industries, Inc. v. New York Life Insurance Co.*, 949 F.2d 960, 965 (8th Cir. 1991), Principal Life "was not providing investment advice, but was instead selling [the] company's [investment] products."  *Accord Farm King Supply*, 884 F.2d at 292 (finding no fiduciary relationship where "the relationship was simply salesmanship, matching the customer's desires with available inventory").  As a result, Defendants cannot be considered fiduciaries.

### III. Even If Defendants Were ERISA Fiduciaries, There Was No Breach of Any Duty

Even if the Court were to find that there is a material issue of fact as to whether Defendants could be fiduciaries, Defendants are still entitled to summary judgment because Plaintiff cannot show that they breached any duty.  Plaintiff claims that Defendants failed to provide adequate information about J-Share mutual funds.  Dkt. 80, Am. Compl. ¶¶ 40-43.  To

prevail on such a failure-to-disclose claim, Mrs. Walsh would have to show two elements: (1) the fiduciary's failure to communicate material facts, and (2) a showing that "those material facts could have adversely affected [her] interests as a plan member." *Borneman v. Principal Life Ins. Co.*, 291 F. Supp. 2d 935, 957 (S.D. Iowa 2003).

Plaintiff alleges that Defendants should have told her that they stood to make a profit when Plaintiff rolled her retirement funds into a Principal IRA, and that they did not provide enough information to enable Plaintiff to make an informed decision. Dkt. 80, Am. Compl. ¶¶ 116-18. This claim is meritless. Principal Life disclosed in the letter sent to Plaintiff that the people who would answer her call were selling Principal products. Stmt. ¶ 5. And while Plaintiff alleges that the J-Shares were not the best possible investments for her (Dkt. 80, Am. Compl. ¶¶ 115-18), Principal Life disclosed the information necessary to make decisions about that investment in a prospectus. Plaintiff admits that Principal Life sent her the J-Shares prospectus before she decided to invest in these funds. *Id.* ¶ 100. The prospectus gave Plaintiff all of the information that she alleges was not revealed, including expense ratios and performance results. *See, e.g.*, Stmt. ¶ 18. By using this information, Mrs. Walsh was free to make her own decision – and did make her own decision – about what constituted the best investments for her individual circumstances.

**Conclusion**

For the reasons articulated above, Defendants are entitled to summary judgment.

                Respectfully submitted,

                PRINCIPAL LIFE INSURANCE COMPANY and
                PRINCOR FINANCIAL SERVICES CORPORATION

                By:    /s/ Eric S. Mattson
                          One of their attorneys

| | |
|---|---|
| Brian L. Campbell | Joel S. Feldman |
| Whitfield & Eddy, PLC | Mark B. Blocker |
| 317 Sixth Ave., #1200 | Eric S. Mattson |
| Des Moines, IA 50309 | Sidley Austin LLP |
| Email: campbell@whitfieldlaw.com | One South Dearborn Street |
| Phone: (515) 246-5503 | Chicago, Illinois 60603 |
| | Email: jfeldman@sidley.com |
| |        mblocker@sidley.com |
| |        emattson@sidley.com |
| | Phone: (312) 853-7000 |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Defendants' Memorandum of Law in Support of Motion for Summary Judgment was served upon the attorneys listed below through the Court's CM/ECF electronic filing system on April 12, 2010.

Brian P. Galligan
Timm W. Reid
James A. Albert
Galligan & Reid, P.C.
300 Walnut Street, Suite 5
Des Moines, IA 50309-2239

/s/ Eric S. Mattson